1  GARY R. GLEASON (SB# 136167)
   MARGARET A. BURTON (SB# 193386)
2  FARBSTEIN & BLACKMAN
   A Professional Corporation
3  411 Borel Avenue, Suite 425
   San Mateo, California  94402-3518
4  Tel: 650-554-6200; Fax: 650-554-6240
   *Local Counsel for Defendant,*
5  USAA GENERAL INDEMNITY COMPANY

6

7  GERALD J. NIELSEN (La. SB# 17078)
   CHRISTOPHER J. BELL (La. SB# 22734)
8  NIELSEN LAW FIRM, L.L.C.
   3838 N. Causeway Blvd.  Suite 2850
9  Metairie, Louisiana 70002
   Tel: 504- 837-2500; Fax: 504-832-9165
10 *Of Counsel for Defendant,*
   USAA GENERAL INDEMNITY COMPANY
11

12

13                    UNITED STATES DISTRICT COURT

14      NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

15 STEFANIE COOK AND NATHANIEL        )  CASE NO. C-07-4042-SC
   COOK,                              )
16                                    )  DEFENDANT'S NOTICE OF MOTION
           Plaintiffs,                )  FOR JUDGMENT ON THE
17                                    )  PLEADINGS PURSUANT TO FRCP
   vs.                                )  12(b)(6)TO DISMISS STATE LAW
18                                    )  BASED CLAIMS AND
   USAA GENERAL INDEMNITY             )  MEMORANDUM  IN SUPPORT
19 COMPANY and DOE 1 and DOE 100,     )  THEREOF
   inclusive,                         )
20                                    )  Date:        October 24, 2008
           Defendants.                )  Time:        10:00 a.m.
21                                    )  Courtroom:   1
                                      )
22                                    )  Complaint Filed: August 6, 2007
                                      )
23 _____   )

24

25

26

27

28

                                    DEFENDANT'S NOTICE & MEMO IN SUPPORT
                                    OF MOTION TO DISMISS STATE LAW CLAIMS

1

<u>NOTICE OF MOTION</u>

2    To Plaintiffs STEFANIE COOK and NATHANIEL COOK ("Plaintiffs") and their

3   Attorney of Record:

4

5    NOTICE IS HEREBY GIVEN that on October 24, 2008 at 10:00 a.m. or as soon

6   thereafter as the matter may be heard, in Courtroom 1 of the United States District Court,

7   Northern  District of California, San Francisco Division, located at 450 Golden Gate

8   Ave.,San Francisco, CA 94102,  Defendant USAA GENERAL INDEMNITY COMPANY

9   will, and hereby does, move this Court for an order granting its **Motion to Dismiss** and

10   thereby dismissing all of the state law based allegations and theories of recovery of the

11   Plaintiffs' Complaint, including , punitive damages, fraud, compensatory damages,

12   consequential damages, interest, emotional distress, and the alleged breach of the duty of

13   good faith and fair dealing, leaving only the breach of contract action and the related

14   declaratory relief claim.

15    The motion will be based on this notice of motion, the following memorandum of

16   points and authorities, the papers, records, and file herein, and such evidence and/or

17   arguments as may be presented at the hearing of the motion.

18

19

20   DATED: September 12, 2008                    Respectfully submitted,

21

22

23   Gary R. Gleason
     Local Counsel for Defendant
24   USAA GENERAL INDEMNITY COMPANY

25

26

27

28

# TABLE OF CONTENTS

I.      FACTUAL BACKGROUND ............................................. 2

II.     SUMMARY OF ARGUMENT ........................................... 3

        A.      The Analysis of USAA's Claims Handling Is Not Subject to State Law

                Standards, but to the Strict Construction Mandate of the NFIP ........... 3

        B.      As a Matter of Law, USAA Has No Financial Interest in Denying the

                Plaintiffs' Claim ................................................ 4

        C.      State Law Claims Are Preempted by Federal Law. ..................... 4

III.    STANDARD OF REVIEW UNDER FRCP 12(b)(6) ....................... 7

IV.     LAW AND ARGUMENT .............................................. 8

        A.      Law Governing Claims is Exclusively Federal .......................... 8

                1.      States Have Never Had Authority Over The NFIP ............... 9

                2.      Policy Mandates are "Strictly Construed" Because of the Constitution

                        ..................................................... 11

        B.      Traditional Preemption Analysis .................................. 16

                1.      Express Preemption ................................... 16

                2.      Conflict Preemption .................................... 18

        C.      Types of Extra-Contractual Claims Rejected by Courts ................ 19

                1.      Breach of the Duty of Good Faith and Fair Dealing. ............. 19

                2.      Emotional Distress Claims ............................... 20

                3.      Punitive Damages of Any Type Are Not Recoverable Under The Act

                        ..................................................... 20

                4.      Interest is Not Recoverable. .............................. 21

1

5.    Consequential Damages Are Excluded. . . . . . . . . . . . . . . . . . . . . . . . . . 22

2

3   V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S NOTICE & MEMO IN SUPPORT
OF MOTION TO DISMISS STATE LAW CLAIMS

<u>TABLE OF AUTHORITIES</u>

I.    U.S. CONSTITUTION

*Article 1, §8, Paragraph 3* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

*Article 9, Paragraph 7* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Article 6, Paragraph 2* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

II.   U.S. SUPREME COURT

*Astoria Federal Sav. And Loan Ass'n v. Solimino*, 501 U.S. 104 (1991) . . . . . . . . . . . . . . . 7

*Barnett Bank of Marion County v. Nelson*, 517 U.S. 25 (1996) . . . . . . . . . . . . . . . . . . . 10, 11

*Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380 (1947) . . . . . . . . . . . . . . . . . . . . . 12, 13, 14

*McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 4 L. Ed. 579 (1819) . . . . . . . . . . . . . 11, 12

*Office of Personnel Management v. Richmond*, 469 U.S. 414 (1990) . . . . . . . . . . . 12, 13, 14

*Stinson v. United States*, 508 U.S. 36,113 S.Ct. 1913 (1993), . . . . . . . . . . . . . . . . . . . . . . . . 14

III.  U.S. APPELLATE COURTS

*Atlas Pallet Inc. v. Gallagher*, 725 F.2d 131 (1st Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . 9

*C.E.R. 1988, Inc. v. Aetna*, 386 F.3d 263 (3rd. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir.1989) . . . . . . . . . . . . . . . 7

*Flick v. Liberty Mutual Ins.*, 205 F.3d 386 (9th Cir. 2000),
cert denied, 531 U.S. 927 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 4, 8, 12, 16, 17, 18

*Forman v. FEMA*, 138 F.3d 543 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Gibson v. American Bankers Ins. Co.*, 289 F.3d 943 (6th Cir. 2002) . . . . . . . . . . . . . . . . 4, 5

*Gowland v. Aetna*, 143 F.3d 951 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 12

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 fn.19
(9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Hanover Building Materials, Inc. v. Guiffrida, 748* F.2d 1011 (5th Cir. 1984). . . . . . . . . . . . 9

*In re Estate of Lee v. NFIP*, 812 F.2d 253 (5th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . 22, 23

DEFENDANT'S NOTICE & MEMO IN SUPPORT
OF MOTION TO DISMISS STATE LAW CLAIMS

*Leland v. Federal Insurance Administrator,* 934 F.2d 524 (4th Cir. 1991) . . . . . . . . . . . . . . 9

*Mack v. South Bay Beer Distrib.,* 798 F.2d 1279 (9th Cir.1986), *abrogated on other grounds, Astoria Federal Sav. and Loan Ass'n v. Solimino,* 501 U.S. 104 (1991) . . . . 7

*Mussoline v. Morris,* 692 F.Supp. 1306 (S.D. Fla. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Phelps v. FEMA,* 785 F.2d 13 (1st Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Newton v. Capital Assur. Co., Inc.,* 209 F.3d 1302 (11th Cir. 2000) . . . . . . . . . . . . . . . . . 7, 9

*Newton v. Capital Assurance Corp.,* 245 F.3d 1306 (11th Cir., 2001) . . . . . . . . . . . . . . . . 22

*Sandia Oil Co., Inc. v. Beckton,* 889 F.2d 258 (10th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . 22

*Sodowski v. National Flood Ins. Program,* 834 F.2d 653 (7th Cir. 1987), cert. denied, 486 U.S. 1043 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Till v. Unifirst Fed. Savings & Loan,* 653 F.2d 152 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . 17

*U.S. v. Parish of St. Bernard,* 756 F.2d 1116 (5th Cir. 1985), cert. denied, 474 U.S. 1070 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Van Holt v. Liberty Mutual Insurance Co.,* 163 F.3d 161 (3rd Cir. 1998) . . . . . . 7, 14, 16, 17

*Wagner v. Director, FEMA,* 847 F.2d 515 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*West v. Harris,* 573 F.2d 873 (5th Cir., 1978), cert. denied 440 U.S. 946 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 17, 21

*Wright v. Allstate,* 2007 WL 2636725 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Wright v. Director, FEMA,* 913 F.2d 1566 (11th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Wyler Summit Partnership v. Turner Broadcasting System, Inc.,* 135 F.3d 658, 661 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## IV.    U.S. DISTRICT COURTS

*3608 Sounds Ave. Condo. Assn. v. South Carolina Ins. Co.,* 58 F.Supp.2d 499 (D. N.J. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 21

*Axelrod v. Bankers Ins. Co., Docket No. C-99-2663 ARB* (N.D.Cal. 01/29/01) . . . . . . . . . 6

*Bianchi v. State Farm Fire and Cas. Co.,* 120 F.Supp. 2d 837 (N.D.Cal. 2000) . . . . . . . . . . 5

*Brown v. Omaha Property and Casualty Insurance Company, Civil Action No. SA-03-0721 (W.D. TX., 1/6/04, adopting report and recommendation of Magistrate Judge dated* 12/5/03) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 16

*Cohen v. State Farm Fire & Casualty Ins. Co.,* 68 F.Supp.2d 1151 (C.D.Cal. 1999) . . . . . . 5

*Davis v. Travelers Property and Casualty Company,* 96 F.Supp.2d 995 (N.D.Cal. 2000) . 5, 6

DEFENDANT'S NOTICE & MEMO IN SUPPORT
OF MOTION TO DISMISS STATE LAW CLAIMS

*Eddins v. Omega Ins. Co.,* 825 F.Supp. 752 (N.D. Miss. 1993) . . . . . . . . . . . . . . . . . . . 4, 21

*Fonseca v. Bankers Ins. Co., Docket No. C-99-1910 ARB* (N.D.Cal. 03/16/01) . . . . . . . . . 6

*Friedman v. South Carolina Ins. Co., 855 F.Supp. 348 (*M.D.Fla.1994*)* . . . . . . . . . . . . . . 17

*Garcia v. Omaha Prop. and Cas. Ins. Co.,* 933 F.Supp 1064, 1070
*(S.D.Fla. 1995), aff'd.* 95 F.3d 58 (11th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Hayes v. Allstate Insurance Company, Case No. CV-03-PT-3343-S*
*(N.D. Alabama, 6/14/2004, adopted by court on 7/12/2004)* . . . . . . . . . . . . . . . . . . . . . . 5, 16

*Jamal v. Travelers,* 97 F.Supp.2d 800 (S.D. Tex 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Mason v. Witt,* 74 F.Supp.2d 955 (E.D.Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 20

*Masoner v. First Community Insurance Co.,* 81 F.Supp.2d 1052 (D.Idaho 2000) . . . . . 10, 11

*Messa Omaha Property & Cas. Ins.,* 122 F.Supp.2d 513 (D.N.J. 2000) . . . . . . . . . 4, 5, 23

*Miller v. Omaha Property & Cas. Ins. Co. 1997 WL 33833419,* (S.D.Tex.,1997) . . . . . . . 20

*Neill v. State Farm Fire and Cas. Co.,* 159 F.Supp.2d 770 (E.D. Pa. 2000) . . . . . . . . . . . 4, 5

*Novikov v. Allstate Ins, Co., 2001 WL 880852* (E.D.Cal. July 11, 2001) . . . . . . . . . 4, 5, 6, 20

*Pecarovich v. Allstate Insurance Company,*
272 F.Supp.2d 981 (C.D.Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 5, 18, 21

*Penny v. Giuffrida,* 897 F.2d 1543 (10ᵗʰ Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Rockland Federal Credit Union v. Witt,* 853 F.Supp. 14 (D.Mass. 1994) . . . . . . . . . . . . . . 9

*Scherz v. South Carolina Insurance Co.,* 112 F.Supp.2d 1000
*(*C.D.Cal. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 5, 7, 8, 16, 18, 19, 20, 21

*Shuwayhat vs. Fidelity National Property &  Casualty Insurance Company,*
*C -07-05351 MHP* (N.D. Cal. 6/20/08) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Steele v. Bankers Insurance, CV-06-1395 GHK* (C.D. Cal. 6/04/07) . . . . . . . . . . . . . . . . . . 6

*Smoak v. Independent Fire Ins. Co.,* 874 F.Supp. 110 (D.S.C. 1994) . . . . . . . . . . . . . . . . . 9

*Texas Landowners Rights Assoc. v. Harris,* 453 F. Supp. 1025 (D.C. 1978*),
aff'd,* 598 F.2d 311 (D.C. Cir. 1979), *cert. denied,* 444 U.S. 927 (1979) . . . . . . . . . . . . . . 17

## V.    U.S. STATUTES

*15 U.S.C §1011* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*15 U.S.C. §1012(b)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*42 U.S.C. § 4001* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 17, 20

*42 U.S.C. §4002* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*42 U.S.C. §4013* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

*42 U.S.C. §4017* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

*42 U.S.C. §4017* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*42 U.S.C. §4019* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12, 14, 15, 17

*42 U.S.C. §4051 - 4056* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*42 U.S.C. §4071* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

*42 U.S.C. §4072* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16

## VI.    U.S. CODE OF FEDERAL REGULATIONS

*44 C.F.R. Part 59* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*44 C.F.R. Part 61, Appendix A(1), (1998 edition)* . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9, 18

*44 C.F.R. Part 62, Appendix A, Article III(c)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 18

*44 C.F.R. §§62.23* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18, 19

## VII.    STATE COURT DECISIONS

*McCormick v. Travelers,* 103 Cal.Rptr.2d 258 *(Cal. App. 1st. Cir. 2001), review denied.* . . 7

## VIII.   STATE STATUES

*McCormick v. Travelers,* 103 Cal.Rptr.2d 258 *(Cal. App. 1st. Cir. 2001), review denied* . . . 7

## IX.    FEDERAL RULES OF CIVIL PROCEDURE

Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

DEFENDANT'S NOTICE & MEMO IN SUPPORT
OF MOTION TO DISMISS STATE LAW CLAIMS

1

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2    This action consists of a purported claim by STEFANIE COOK and NATHANIEL

3 COOK ("Plaintiffs") against a Standard Flood Insurance Policy issued under the National

4 Flood Insurance Program ("NFIP").  Defendant USAA GENERAL INDEMNITY

5 COMPANY ("USAA") issued the subject policy pursuant to the "Write Your Own"

6 program, whereby private insurers act as a conduit for the issuance of the Federal flood

7 insurance policy.   Consequently, and as more fully explained below, all claims other than

8 the breach of contract claim should be dismissed,  since such claims are preempted and

9 barred by federal Constitutional, statutory and regulatory law.  Indeed, the statutory scheme

10 underlying flood insurance expressly preempts state law based claims as per Article IX of

11 the Standard Flood Insurance Policies at issue (codified and found in its entirety at 44

12 C.F.R. Part 61, Appendix A(1), (1998 edition)[1]. If Plaintiffs are bringing claims under the

13 "federal common law," there are no such viable claims.  The Fifth Circuit recently addressed

14 this issue in *Wright v. Allstate*, 2007 WL 2636725 (5th Cir. 2007)[2].  The court in *Wright* found

15 that no federal common law right of action to bring extra-contractual claims can be inferred

16 under the NFIA.

17    Other courts within the state of California have granted this exact Motion, including

18 the decisions in *Pecarovich v. Allstate Insurance Company*, 272 F.Supp.2d 981 (C.D.Cal.

19 2003), wherein Judge Collins expressly relied upon Judge Matz's reasoning in *Scherz v.*

20 *South Carolina Insurance Co.*, 112 F.Supp.2d 1000 (C.D.Cal. 2000).  Most recently the

21 Third Circuit recognized federal preemption within the NFIP in *C.E.R. 1988, Inc. v. Aetna*

22 386 F.3d 263 (3rd. Cir. 2004).[3]

23    Defendant USAA GENERAL INDEMNITY COMPANY respectfully submits that

24 the law and facts unequivocally support, and indeed require, the dismissal of all claims

25 except for the breach of contract claim.

26

[1]Attached as Exhibit 1 hereto.

27

[2]  Attached as Exhibit 2 hereto.

28

[3]  Attached as Exhibit 3 hereto.

I.    **FACTUAL BACKGROUND**

Plaintiffs are the owner of a residence located at 83 Shady Lane, Ross, California. The structure was insured under U.S. Treasury-underwritten Standard Flood Insurance Policy ("SFIP") Number 031660680F issued by and through USAA General Indemnity Company ("USAA"). *See* Plaintiffs' Complaint, ¶6. As explained herein USAA issued the SFIP (and *could only* issue) in its capacity as a Write Your Own Carrier participating in the U.S. Government's National Flood Insurance Program ("NFIP"). Plaintiffs' SFIP had building coverage limits of $250,000.00 with a $5,000.00 deductible, and contents coverage limits of $100,000 with a deductible of $5,000.00 *See* Plaintiffs' Complaint. ¶6, and Exhibit "1" thereto.

On or about December 31, 2005, Plaintiffs allege they suffered a flood loss to their residence. *See* Plaintiffs' Complaint, ¶8. Plaintiffs reported the flood loss to USAA. *See* Plaintiffs' Complaint at ¶9.

USAA reviewed the claim and paid Plainitffs (or their assigns) $24, 382.51 in SFIP benefits for damages resulting from "direct physical loss" from a flood. Importantly, all claims for benefits under the SFIPs are paid for with U.S. Treasury funds and not the funds of USAA. *See Flick v. Liberty Mutual Ins. Co.,* 205 F.3d 386, 387 (9th Cir., 2000), *cert. denied* 531 U.S. 927 (2000). Thus, for the December 31, 2005, loss, the $24, 382.51 paid to Plaintiffs under their SFIP consisted of U.S. Treasury benefits.

Plaintiffs now claim that they are entitled to additional damages, interest, consequential damages, punitive damages, and compensatory damages. *See* Plaintiffs' Complaint, ¶¶11, 17 -21 and the Prayer for Relief following ¶21.

In connection with litigation, and before paying any additional amounts for the alleged loss of December 31, 2005, and in observing its statutory duty to the U.S. Government pursuant to the NFIP, USAA asked the Plaintiffs to (1) provide evidence of the submittance of a timely proof of loss; (2) provide evidence that the damages claimed are related to direct physical loss from the flood; (3) demonstrate that the repairs they are

1    seeking did not constitute an enhancement of the building and (4)  provide receipts

2    evidencing all repairs to date.  Plaintiffs have been unable to prove all the prerequisites, and

3    consequently have not met the policy requirements for payment of any additional amounts

4    of U.S. Treasury funds under the Standard Flood Insurance Policy.

5         Moreover, the claims plead by Plaintiffs seek much more than any contractual

6    compliance with the SFIP.  Rather, Plaintiffs sue USAA for a host of state law claims, as

7    well.  Accordingly, USAA now moves to dismiss those claims for punitive damages, fraud,

8    compensatory damages, consequential damages, interest, emotional distress, and the alleged

9    breach of the duty of good faith and fair dealing, leaving only the breach of contract action

10    and the related declaratory relief claim.

11

12

13    II.    **SUMMARY OF ARGUMENT**

14         Plaintiffs sued USAA because of the decision not to pay the plaintiff any additional

15    *federal* benefits under a U.S. Treasury-underwritten SFIP.  Relying upon California state

16    law and/or federal common law, the Plaintiffs seek not only a federal recovery under the

17    SFIP, but, in addition, seek extra contractual remedies under state law based theories,

18    premised upon their belief that the flood insurance claim was not properly handled.

19    However, there are at least <u>three</u> fundamental flaws in the Plaintiff's position:

20

21         A.    <u>The Analysis of USAA's Claims Handling Is Not Subject to State Law</u>
              <u>Standards, but to the Strict Construction Mandate of the NFIP.</u>

22

23         USAA was never allowed (or expected) to adjust the Plaintiffs' National Flood

24    Insurance Program ("NFIP") claims in accordance with the typical "reasonableness"

25    principles embodied in the various States' consumer  protection laws.  To the contrary,

26    USAA was, at all times, Constitutionally required to "strictly construe and enforce" all of

27    the provisions of the SFIP during the claims adjustment process. *See Flick v. Liberty Mutual*

28    *Ins.,* 205 F.3d 386, 391-392 (9th Cir. 2000), *cert denied,* 531 U.S. 927 (2000); *Gowland v.*

     *Aetna,* 143 F.3d 951, 954 (5th Cir. 1998).

1

**B.    As a Matter of Law, USAA Has No Financial Interest in Denying the Plaintiffs' Claim**

2

3    USAA never had any incentive whatsoever to pay its customers anything less than

4    *top dollar* on their NFIP claims.   The money to be paid would be Federal funds, not

5    USAA's money.  Furthermore, USAA profits from the payment of claims, and not the

6    denial.  As has been recognized by many courts, including specifically *Scherz v. South*

7    *Carolina Insurance Co.*, 112 F.Supp.2d 1000, 1008 (C.D.Cal. 2000); *3608 Sounds Ave.*

8    *Condo. Assn. v. South Carolina Ins. Co.*, 58 F.Supp.2d 499 (D. N.J. 1999) and *Eddins v.*

9    *Omega Ins. Co.*, 825 F.Supp. 752 (N.D. Miss. 1993), insurance companies that issue the U.S.

10    Government's SFIP are paid by FEMA on a percentage of claims paid basis, such that the

11    higher the claim payment, the <u>more</u> the carrier is paid by FEMA.  *See*  44 C.F.R. Pt. 62,

12    App. A, Art. III(C) (WYO carrier makes 3.3% commission on payment of a covered claim).

13    Thus, if this Court were to rule against USAA on the breach of contract action, USAA

14    would actually <u>profit</u> by paying the Plaintiffs.

15

16

17    **C.    State Law Claims Are Preempted by Federal Law**

18    As has been held by virtually every court to consider the issue, <u>all</u> state law based

19    extra-contractual claims sought to be raised in the context of an SFIP claim are barred and

20    preempted by federal law.  *See Pecarovich v. Allstate Insurance Company*, 272 F.Supp.2d

21    981 (C.D.Cal. 2003); *Scherz v. South Carolina Insurance Co.*, 112 F.Supp.2d 1000, 1008

22    (C.D.Cal. 2000);  *Novikov v. Allstate Ins, Co.*, 2001 WL 880852 (E.D.Cal. July 11, 2001)[4];

23    *Mason v. Witt*, 74 F.Supp.2d 955 (E.D.Cal. 1999); *Gibson  v. American Bankers Ins. Co.*,

24    289 F.3d 943 (6th Cir. 2002); *Neill v. State Farm Fire and Cas. Co.*, 159 F.Supp.2d 770 (E.D.

25    Pa. 2000); *Messa Omaha Property & Cas. Ins. Co.*, 122 F.Supp.2d 513 (D.N.J. 2000) are just

26

27

28    [4] The *Pecarovich, Scherz* and *Novikov* rulings are attached hereto as Exhibits 4, 5 and 6, respectively.

1   *some* of the many holdings taking this view.[5] See also Exhibit 9, that being a list of NFIP

2   cases finding preemption of state law based extra-contractual claims.

3       Once these three legal propositions are understood, the following point becomes

4   clear:  The Plaintiffs clearly has the right to ask this Court to evaluate whether it is entitled

5   to further  U.S. Treasury benefits under the contract at issue, the SFIP.  However, the

6   Plaintiffs plainly may <u>not</u> cajole USAA, the U.S. Government's "fiduciary" and "fiscal

7   agent", into releasing federal funds to them by threatening said federal fiscal agent with

8   state law based extra-contractual claims.

9       California federal courts have addressed the issue of preemption in the context of

10  state law based claims.  *See Pecarovich v. Allstate Insurance Company*, 272 F.Supp.2d 981

11  (C.D.Cal. 2003), In *Percarovich*, Judge Collins, relies upon Judge Matz's reasoning in *Scherz*

12  *v. South Carolina Insurance Co.*, 112 F.Supp.2d 1000 (C.D.Cal. 2000),[6] and holds that state

13  law based claims arising out of flood insurance claims handling matters are barred and

14  preempted by federal Constitutional, statutory and regulatory law.

15      Notably, other courts within the Ninth Circuit have ruled that state law extra-

16  contractual claims are preempted by federal law.  *See Novikov v. Allstate Ins, Co.,* 2001 WL

17  880852 (E.D.Cal. July 11, 2001); *Mason v. Witt,* 74 F.Supp.2d 955 (E.D.Cal. 1999); and

18  *Bianchi v. State Farm Fire and Cas. Co.*, 120 F.Supp. 2d 837 (N.D.Cal. 2000).  The only

19  published decision  to differ from these cases within the Ninth Circuit is *Davis v. Travelers*

20  *Property and Casualty Company*, 96 F.Supp.2d 995 (N.D.Cal. 2000).  However, *Davis* is no

21  longer good law as the analysis contained therein was effectively overruled by FEMA's *post-*

22

---

23  [5] There are additional and more recent decisions wherein a court dismissed state law
    claims and remedies.  These decisions relate to the current version of the SFIP.  See e.g.,
24  *Brown v. Omaha Property and Casualty Insurance Company,*  Civil Action No. SA-03-0721
    (W.D. TX., 1/6/04, adopting report and recommendation of Magistrate Judge dated
25  12/5/03);  *Hayes v. Allstate Insurance Company,* Case No. CV-03-PT-3343-S (N.D.
    Alabama, 6/14/2004, adopted by court on 7/12/2004) attached as Exhibits 7 and 8
26  respectively.)

27

28  [6]  Please note that in *Scherz*, Judge Matz repudiated his prior ruling in *Cohen v. State Farm*
    *Fire & Casualty Ins. Co.*, 68 F.Supp.2d 1151 (C.D.Cal. 1999), finding that state law claims
    against a WYO carrier are indeed preempted by federal law.

*Davis* clarification of Article IX ("What Law Governs") of the SFIP as done and effective
December 31, 2000, which made it clear that only federal courts and federal law may be used
for claims handling issues under the SFIP.[7]

Further, judges within this District have refused to follow *Davis* and hold that state
law based extra-contractual claims are preempted by federal law. *See Axelrod v. Bankers
Ins. Co.,* Docket No. C-99-2663 ARB (N.D.Cal. 01/29/01);[8] *see also Fonseca v. Bankers Ins.
Co.,* Docket No. C-99-1910 ARB (N.D.Cal. 03/16/01).[9]   Indeed,  counsel for similarly
situated plaintiffs have recently ceased with the pretense of opposing this type of motion,
and the courts are regularly ruling on unopposed motions to dismiss. *See, e.g., Steele v.
Bankers Insurance,* CV-06-1395 GHK (C.D. Cal. 6/04/07)*, Shuwayhat vs. Fidelity National
Property & Casualty Insurance Company,*  C -07-05351 MHP (N.D. Cal. 6/20/08).[10]

By filing this motion, USAA seeks to make certain that it can fulfill its fiduciary
responsibilities to FEMA during this litigation.  USAA seeks to know that if it honors its
Constitutional obligation to "strictly construe and enforce" the provisions of the U.S.
Treasury-underwritten SFIP, that it will not risk punishment for said decision *under state
law.*  USAA has no problem presenting the breach of contract action for this Court's review.
If the Court believes the Plaintiffs are entitled to federal benefits under the NFIP, and so
orders such payment, then the system of review designed by FEMA and Congress has
worked as it should.  However, as neither FEMA nor Congress has allowed for any role by
the States in claims adjustment, the additional threat of state law based liability is  not
available to  sway Defendant USAA from doing its job for FEMA.

---

[7]  In addition, *Davis* has been subsequently criticized by several courts for its failure to
extend deference to the position of FEMA in that matter. See e.g. *Novikov, supra,* 2001
WL 880852 at page 5 of Exhibit 6.

[8]  A copy of the *Axelrod* Order is attached hereto as Exhibit 10.

[9]  A copy of the *Fonseca* Order is attached hereto as Exhibit 11.

[10]  Both *Steele* and *Shuwayhat* are attached hereto as Exhibit 14.

1  ## III.    STANDARD OF REVIEW UNDER FRCP 12(b)(6)

2      The Ninth Circuit has held that "[t]he principal difference between motions filed

3  pursuant to Rule 12(b) and Rule 12(c) is the time of filing" and that "[b]ecause the motions

4  are functionally identical, the same standard of review applicable to a Rule 12(b) motion

5  applies to its Rule 12(c) analog." *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192

6  (9th Cir.1989).    All well pleaded <u>facts</u> (as opposed to conclusory allegations) contained

7  within the Complaint are to be accepted as true. *See Wyler Summit Partnership v. Turner*

8  *Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).    The Court may also consider

9  documents attached to the Complaint. *See Hal Roach Studios, Inc. v. Richard Feiner &*

10  *Co.*, 896 F.2d 1542, 1555 fn.19 (9th Cir. 1989).

11      Defendant USAA asks this Court to note that, as a matter of law, the SFIP is the

12  only policy of flood insurance available in communities participating in the NFIP, as in this

13  case. *See Garcia v. Omaha Prop. and Cas. Ins. Co.*, 933 F.Supp 1064, 1070 (S.D.Fla. 1995),

14  *aff'd.* 95 F.3d 58 (11th Cir. 1995).    As such, there can be no argument that Plaintiffs received

15  any other policy.    Further, the SFIP is published in its entirety at 44 C.F.R. Pt. 61, App.

16  A(1)[11].    As the SFIP is published as law within the Code of Federal Regulations, this Court

17  may take judicial notice of its provisions.

18      Attached to this memorandum as exhibits are two *amicus curiae* briefs filed by

19  FEMA through the U.S. Department of Justice.    One regards preemption and was

20  submitted in *Van Holt v. Liberty Mutual Insurance Co.*, 163 F.3d 161 (3rd Cir. 1998)(on

21  rehearing). *See* Exhibit 12.    The other concerns liability for interest and was submitted in

22  *Newton v. Capital Assur. Co., Inc.*, 209 F.3d 1302 (11th Cir. 2000). *See* Exhibit 13.    Both

23  briefs may be examined by this Court in the content of this motion under the rule of *Mack v.*

24  *South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.1986), *abrogated on other grounds*,

25  *Astoria Federal Sav. and Loan Ass'n v. Solimino*, 501 U.S. 104 (1991).    Moreover, examples

26  of courts taking judicial notice of these briefs include, *Scherz v. South Carolina Insurance*

27  *Co.*, 112 F.Supp.2d 1000 (C.D.Cal. 2000)*, and *McCormick v. Travelers*, 103 Cal.Rptr.2d 258,

28

---

[11]  Attached as Exhibit 1.

1    266 (Cal. App. 1st. Cir. 2001), *review denied.*

2         As discussed below, it is USAA's position that, except for the breach of contract

3    action, all other causes of action and theories of recovery fail to state a claim upon which

4    relief may granted, including the claims for interest, punitive damages, consequential

5    damages, compensatory damages and the alleged breach of the duty of good faith and fair

6    dealing.  These claims are preempted and barred by federal Constitutional, statutory and

7    regulatory law, and as such, federal law does not allow for the recovery of same.  Such claims

8    should be dismissed pursuant to F.R.Civ.P. Rule 12(b)(6).

9

10   IV.   <u>LAW AND ARGUMENT</u>

11        In the Plaintiffs' Complaint, Plaintiffs allege that Defendant breached the contract of

12   flood insurance during the adjustment of the Plaintiffs' flood loss claim.  Thus, Plaintiffs

13   claim they are entitled to state law based remedies such as (1) punitive damages, (2)

14   compensatory damages; (3) consequential damages, (4) damages for the breach of good

15   faith and fair dealing; (4) damages for emotional distress, and (5) interest.  However, based

16   on clearly established jurisprudence, Plaintiffs' state law based extra-contractual claims are

17   barred and preempted by federal Constitutional, regulatory, and statutory law.  Before

18   submitting its arguments with respect to preemption, USAA respectfully requests that this

19   Court review the history of the NFIP as found in *Flick* at 387-389 and *Scherz* at 1004.

20

21        A.    <u>Law Governing Claims is Exclusively Federal</u>

22        The front page of every SFIP expressly states that all flood insurance policies provide

23   flood insurance subject to the terms of the National Flood Insurance Act of 1968 ("NFIA"),

24   42 U.S.C. § 4001, *et seq.*, and the regulations found in Title 44 of the Code of Federal

25   Regulations.  (The last section of each SFIP - Article IX - repeats this same requirement.)

26   Therefore, claimants are bound not only by the terms of the policy, but by the terms of the

27

28

DEFENDANT'S NOTICE & MEMO IN SUPPORT
OF MOTION TO DISMISS STATE LAW CLAIMS

1 statutes and applicable regulations.[12]  Further, construction or interpretation of an insurance

2 contract is purely a question of law for the court to decide.[13]  Moreover, in interpreting a

3 flood insurance policy issued pursuant to the NFIP, the court must look to federal common

4 law.[14]  Notably, the Plaintiffs are bound by this choice of law provision as it is part of the

5 contract–here the SFIP–they seek to enforce.  *See* 44 C.F.R. Pt. 61, App. A(1), Art.  IX.

6

7         1.     *States Have Never Had Authority Over The NFIP*

8         Under the NFIP, none of the States have ever had any regulatory control over any of

9 the Program's "operations," regardless of the approach to any possible claim.[15]  As a

10 foundational matter, the U.S. insurance industry is an operation of interstate commerce.  As

11 such, its regulation is solely the province of the federal government. U.S. Const. Art. 1, §8

12 Par. 3.  The only reason that the various States are allowed to operate insurance regulatory

13 commissions and pass insurance laws is because Congress has allowed them to do so, and

14 then agreed not to preempt state insurance law via the McCarran-Ferguson Act, 15 U.S.C.

15 §1011, *et seq.*  That Act effectively tenders to the States the inherent national power over

16 regulation of the U.S. insurance industry.  *However,* Congress specifically and expressly

17 exempted from this tender all instances where the U.S. Congress enacts legislation which

18 "specifically relates to the business of insurance":

19         (b) Federal regulations

20

---

21 [12] *Mussoline v. Morris*, 692 F.Supp. 1306 (S.D. Fla. 1987).

22 [13] *Sodowski v. National Flood Ins. Program*, 834 F.2d 653 (7th Cir. 1987), *cert. denied*, 486 U.S. 1043 (1988); *Atlas Pallet Inc. v. Gallagher*, 725 F.2d 131 (1st Cir. 1984); *Smoak v. Independent Fire Ins. Co.*, 874 F.Supp. 110 (D.S.C. 1994); *Rockland Federal Credit Union v. Witt*, 853 F.Supp. 14 (D.Mass. 1994).

23
24

25 [14] *Leland v. Federal Insurance Administrator*, 934 F.2d 524 (4th Cir. 1991); *Wright v. Director, FEMA*, 913 F.2d 1566 (11th Cir. 1990); *Sodowski v. National Flood Ins. Program*, 834 F.2d 653 (7th Cir. 1987), *cert. denied*, 486 U.S. 1043  (1988); *U.S. v. Parish of St. Bernard*, 756 F.2d 1116 (5th Cir. 1985), *cert. denied*, 474 U.S. 1070 (1985); *Hanover Building Materials, Inc. v. Guiffrida*, 748 F.2d 1011 (5th Cir. 1984).

26
27

28 [15] The States do not contest this.  Please see *Jamal v. Travelers*, 97 F.Supp.2d 800, 804-805 (S.D. Tex 2000) in which the Texas Department of Insurance provided an affidavit which stated that it does not regulate matters involving the NFIP.

No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, *unless such Act specifically relates to the business of insurance* .... (emphasis added).

15 U.S.C. §1012(b)

The meaning and import of the quoted language was established by the U.S. Supreme Court in *Barnett Bank of Marion County v. Nelson*, 517 U.S. 25 (1996).  In *Barnett*, the Supreme Court conducted an in-depth discussion of the McCarran-Ferguson Act's "language and purpose" as well as the "circumstances surrounding" its enactment. *Id.* at 37-38.  Within that analysis, the Supreme Court held that the language "specifically relates to the business of insurance," found at 15 U.S.C. §1012(b), is to be interpreted "broadly."  In this regard, the court explained:

Our conclusion rests upon the McCarran-Ferguson Act's language and purpose taken together.  Consider the language – "specifically relates to the business of insurance."  In ordinary English, a statute that says that banks may act as insurance agents, and that the Comptroller of the Currency may regulate their insurance-related activities "relates" to the insurance business.  The word "relates" is highly general, and this Court has interpreted it broadly in other preemption contexts.  *Id.* at 38.

The specific question of whether the McCarran-Ferguson Act precludes FEMA's regulations from preempting state insurance regulation was directly addressed in *Masoner v. First Community Insurance Co.*, 81 F.Supp.2d 1052 (D.Idaho 2000).  In *Masoner*, the court dispensed with the Plaintiff's argument against preemption as follows:

At the hearing, Plaintiffs' counsel argued for the first time that the McCarran-Ferguson Act, 15 U.S.C. §1011-1015, saves Plaintiffs' state law claims from federal preemption.  However, this argument ignores §1012(b) of that Act, which provides as follows:

No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, *unless such Act specifically relates to the business of insurance* ...

15 U.S.C. §1012(b) (emphasis added).  In this case, through the enactment of the National Flood Insurance Act, Congress has expressly authorized FEMA, an agency of the federal government, to regulate the business of flood insurance, including the methods by which claims are adjusted and paid for any damage to or loss of property covered by a Standard Flood Insurance Policy.  42 U.S.C. §4019.  Thus despite Plaintiffs' assertions to the contrary, the McCarran-Ferguson Act's savings clause does not preclude the application of the provisions of the National Flood Insurance Act in this case.  See

*Humana Inc. v. Forsyth* 525 U.S. 299, 299, 119 S.Ct. 710, 716 142 L.Ed.2d 753 (1999) ("The McCarran-Ferguson Act ... precludes application of a federal statute in the face of state law 'enacted ... for the purpose of regulating the business of insurance,' if the federal measure does not 'specifically relat[e] to the business of insurance ...' "). *Masoner, supra* at 1057, n.3.

Based upon *Barnett Bank* and *Masoner*, the McCarran-Ferguson Act mandates that the federal government can displace insurance state law based insurance regulations when Congress directly enters the field, and further, that the McCarran-Ferguson Act establishes that Congress expressly reserves the power, under the Supremacy Clause of the Constitution, to have federal law govern the question where Congress enacts legislation which "specifically relates to the business of insurance." Beyond question, the National Flood <u>Insurance</u> Act "specifically relates to the business of insurance." State law is thus displaced.

> 2.    *Policy Mandates are "Strictly Construed" Because of the Constitution*

Defendant USAA next respectfully asks this Court to focus upon the following specific provisions of our Constitution:

Art. 1 §8 Par. 3:  To regulate commerce with foreign nations, and among the several states, and with the Indian tribes;

Art. 1 §9 Par. 7: No money shall be drawn from the Treasury, but in consequence of appropriations made by law; and a regular statement and account of the receipts and expenditures of all public money shall be published from time to time.

Art. 6 Par. 2: This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, and anything in the Constitution or laws of any state to the contrary notwithstanding.

In *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 4 L. Ed. 579 (1819), the Justices of the Supreme Court reviewed the just-quoted Constitutional provisions,  then Chief Justice John Marshall penned the following bedrock principle of our Republic:

> The Court has bestowed on this subject its most deliberate consideration.  The result is a conviction that **the states have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operations of the Constitutional laws enacted by Congress to carry into execution the powers invested in the general government.**  This is we think, the unavoidable consequence of that supremacy which the Constitution has declared.  We are unanimously of opinion that the law passed by the

legislature of Maryland, imposing a tax on the bank of the United States is unconstitutional and void. (emphasis added) *Id.* at 435.

To allow the state law claims at issue in this matter to proceed, with all respect, would be to violate *McCulloch.* Any such ruling would necessarily allow a state to regulate and burden and control "the operations of the Constitutional laws enacted by Congress." *Id.* As per the U.S. Congress, only FEMA may make *regulatory* decisions regarding NFIP claims (42 U.S.C. §4019), and only the federal courts may *adjudicate* those claims. *See* 42 U.S.C. §4072. The reason: U.S. Treasury funds are used directly to pay for both the claims and the adjustment of the claims. 42 U.S.C. §4017(d). Thus, as per Congress and the Constitution, there is no role for the States in the U.S. Treasury-financed NFIP claims adjustment.

In *Gowland,* at 954, the Fifth Circuit directly held that "the provisions of an insurance policy issued pursuant to a federal program must be strictly construed and enforced." The Ninth Circuit held that "the conditions of an insurance policy offered pursuant to a congressionally mandated program, such as the NFIP, must be strictly observed." *See Wagner v. Director, FEMA,* 847 F.2d 515, 518 (9th Cir. 1988); *see also, Flick,* at 391-392 , discussing the Constitutional foundation of SFIP claims analysis. The reason why FEMA regulations and the Policy's provisions must be "strictly construed and enforced," is *Constitutional.* In this regard, please recall that all payments are a "direct charge on the public treasury." *Gowland,* at 953.

It is requested that this Court also review the Supreme Court's decisions in *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380 (1947), and *Office of Personnel Management v. Richmond,* 469 U.S. 414 (1990). Courts have repeatedly held that these Supreme Court precedents govern analysis of claims such as those raised at bar, when brought in the context of the NFIP.[16] While USAA clearly cannot quote the entirety of both decisions, the following passages directly govern the current situation. First, in *Merrill, supra* at 384-85, is found the following:

---

[16] *Gowland, supra; Forman v. FEMA,* 138 F.3d 543 (5th Cir. 1998); *Flick, supra; Penny v. Giuffrida,* 897 F.2d 1543 (10th Cir. 1990); *Wagner, supra; Phelps v. FEMA,* 785 F.2d 13 (1st Cir. 1986).

If the Federal Crop Insurance Act had by explicit language prohibited the insurance of spring wheat which is reseeded on winter wheat acreage, the ignorance of such a restriction, either by the respondents or the Corporation's agent, would be immaterial and recovery could not be had against the Corporation for loss of such reseeded wheat. **Congress could hardly define the multitudinous details appropriate for the business of crop insurance when the Government entered it. Inevitably 'the terms and conditions' upon which valid governmental insurance can be had must be defined by the agency acting for the Government. And so Congress has legislated in this instance, as in modern regulatory enactments it so often does by conferring the rule-making power upon the agency created for carrying out its policy.**[17]  See §1516(b), 52 Stat. 72, 77, 7 U.S.C.A. §1516(b).  Just as everyone is charged with the knowledge of the United States Statutes at Large, Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents.

Accordingly, the Wheat Crop Insurance Regulations were binding on all who sought to come within the Federal Crop Insurance Act, regardless of actual knowledge of what is in the Regulations or of the hardship resulting from innocent ignorance.  The oft-quoted observation in *Rock Island, Arkansas & Louisiana R. Co. v. U.S.,* 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188 (1920), that 'Men must turn square corners when they deal with the Government,' does not reflect a callous outlook.  **It merely expresses the duty of all courts to observe the conditions defined by Congress for charging the public treasury.**  (emphasis added).[18]

Second, *Richmond,* which explained the Constitutional underpinnings of the *Merrill* doctrine, includes these points:

We hold that payments of money from the Federal Treasury are limited to those authorized by statute, and we reverse the contrary holding of the Court of Appeals.  *Id.* at 416.

\*   \*   \*

Our cases underscore the straight forward and explicit command of the Appropriations Clause. "It means simply that no money can be paid out of the Treasury unless is has been appropriated by an act of Congress." *Id.* at 424.

\*   \*   \*

But the Clause has a more fundamental and comprehensive purpose, of direct relevance to the case before us.  It is to assure that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good and not according to the individual favor of government agents or the individual pleas of litigants.  *Id.* at 427-28..

\*   \*   \*

Even if most claims were rejected in the end, the burden of defending such estoppel claims would itself be substantial.  *Id.* at 433.

---

[17] At bar, this tender of rule-making power is found at 42 U.S.C. §4019.  See *West v. Harris,* 573 F.2d 873 (5th Cir., 1978), *cert. denied* 440 U.S. 946 (1979), the first decision by any court of appeal involving the NFIP.

[18] Given that such a duty binds this  Court, it certainly binds USAA.

*   *   *

The rationale of the Appropriations Clause is that if individual hardships are to be remedied by payment of Government funds, it must be at the instance of Congress. *Id.* at 434.

In light of *Merrill* and *Richmond*, the Court is asked to consider the following:  First, Congress underwrites all operations of the NFIP through the U.S. Treasury.[19]  This includes appropriations for both the payment of claims and the adjustment of those claims.  *Id.* Similarly, Congress has conferred "rule-making power upon the agency created for carrying out its policy," in this case, FEMA, specifically with regard to rules governing the adjustment of claims.[20]  Also, Congress statutorily authorized FEMA to enter into "Arrangements" with private insurance companies which operate with a federal checkbook as the "fiscal agent" of the United States.[21]  Under the "Arrangement" established by FEMA with Congressional authorization, all payments made under an NFIP claim are "binding" upon the Federal Insurance Administration.[22]  This includes defense costs in ensuing litigation.[23]  Thus, it is irrefutable that *everything* involved in this case is occurring pursuant to federal government rules, and at federal government expense.  USAA makes no rules and has no risk whatsoever. All rule making and risk and expense is the province of the federal government.

FEMA's own position on these issues could not be more clear.  See the *amicus curiae* brief the United States submitted in *Van Holt, supra.*  (Exhibit 12).  This Court is respectfully asked to examine that *amicus* brief as it sets forth the longstanding position of the agency charged by Congress with administering the NFIP.[24]  Among the many important explanations found within that brief, are the following:

[19] 42 U.S.C. §4017(d)(1).

[20] 42 U.S.C. §§4013, 4017, 4019; See also *Merrill, supra,* at 384-85, and *West, supra.*

[21] 42 U.S.C. §4071(a)(1).

[22] 44 C.F.R. §§62.23(i)(l) and (6), and Pt. 62, App. A, Art. II(F). And Art. III(C).

[23] 44 C.F.R. §§62.23(i)(6) and (9).

[24] Defendant respectfully suggests that FEMA's interpretation of its own regulation should be given "controlling weight" and "binding" upon the federal courts. See *Stinson v. United States,* 508 U.S. 36,113 S.Ct. 1913 (1993), and the several Supreme Court cases cited therein.

The United States has a significant interest in how operation of the program is dealt with in the courts, because the terms of the Standard Flood Insurance Policy ("SFIP") are fixed by FEMA regulation on a nationwide basis; because Congress has vested FEMA with the authority to establish the way claims are to be proved, adjusted, and paid; and because the claims investigation and adjustment process is and must be governed by uniform federal law. **The United States thus has a compelling interest in assuring that State regulators and State courts do not – directly or indirectly, by construction of policies or scrutinizing the investigation and adjustment of claims, or by threatening to do so – undermine operation of this federal program.** (emphasis added) *Id.* at p. 1.

* * *

A federal insurance program is not subject to State law. . . There is no role in such cases for State regulators or State courts. The essence of the complaint here is based on execution of the federal insurance contract, and artful pleading cannot transmogrify this federal contract case into a State tort case. State law is preempted as a matter of law and contract.

Congress provided for "exclusive" district court jurisdiction, yet the decision here would allow State and State courts to regulate indirectly, through their consumer protection laws, the investigation and adjustment of federal flood insurance clams under this federal program. **This could wreak havoc on the program and cost the Treasury millions of dollars.** Under the Panel's reasoning, the 50 States would become co-administrators of the program along with FEMA, a result Congress plainly did not intend when it enacted §4019 vesting such administrative power in FEMA, and when it specifically amended §4072 to make federal jurisdiction exclusive. (emphasis added) *Id.* at pp 8-9.

* * *

When plaintiffs had a complaint about purported delay in processing their claim, they went not to FEMA, as they should have, see 44 C.F.R. 61.14(b), but to State insurance regulators (Op., at 1a-2a). **Allowing State regulators to breathe down the necks of the WYO companies, as happened here, would make the 50 States co-administrators of the program along with FEMA, a result Congress plainly did not intend. It would also deprive the program of the national uniformity Congress did intend**, and make a hodgepodge of the program, undermining the federal mission. (emphasis added) *Id.* at p. 13.

* * *

D. Yet another reason exists why State law cannot apply: About 10% of the flood policies are written directly by FEMA, and it is essential to the public fisc and to the program's uniformity that FEMA-written policies be administered in exactly the same way. **FEMA could not be sued in State court or subjected to State regulators, and it is necessary that WYO companies enjoy the same protection.**

In sum, plaintiffs cannot forego their right to sue under the insurance policy and seek relief under State law, for that would undermine the federal program. Therefore, a claim that can be raised in federal court under the policy must be raised in federal court under the policy, because **State remedies are preempted.** (emphasis added) *Id.* at pp 14-15.

1      With respect, it is prayed that this Court will defer to FEMA on these issues (and to
2  the great majority of courts which have agreed with FEMA) given that the question at bar
3  goes to the core of FEMA's ability to carry out its mission for Congress.

4      **B.    Traditional Preemption Analysis**

5      The jurisprudential doctrine of preemption is examined in three ways:  First, the
6  Court considers whether there is "express preemption," whereby Congress or federal
7  regulation expressly preempts a given field.  Second, there can be "field preemption,"
8  wherein federal regulation of the field is so pervasive, so as to displace and preempt state law.
9  Third, is "conflict preemption," where application of state regulation would constitute an
10  impediment to Congressional intent.  Defendant's memorandum will only address express
11  and conflict preemption.

12

13      1.    *Express Preemption*

14      The language in Article IX represents a form of express preemption by unequivocally
15  stating that the SFIP is governed by federal statutory and regulatory law.[25]

16      In addition, the following express provisions of the National Flood Insurance Act
17  bolster the view that Article IX of the SFIP should be deemed an express preemption
18  provision: to wit, in 42 U.S.C. §4072, the Congress specifically precluded state court
19  jurisdiction over NFIP claims.[26]  As per FEMA and the Third Circuit in *Van Holt*, this would
20  include extra contractual claims disputes.  Thus, a critically important question which arises is
21  this: How could it be said that the laws of the various States properly govern NFIP claims
22  handling decisions, when the courts of those States cannot entertain such claims?  Because
23  Congress expressly legislated to defeat state court jurisdiction over the NFIA, and because

24

25

---

26  [25] This has now been even more clarified.  This point is explained in the express
    preemption section of Judge Matz's ruling in *Scherz* at 1004-05.  Two other courts have
27  also held that there is an express preemption provision in Article IX of the SFIP.  See
    Exhibits 6 and 7 (the *Brown* and *Hayes* rulings).
28
    [26] *Van Holt, supra;* and  *Flick, supra,* at FN4.

1  Congress expressly tendered <u>all</u> rule making authority to FEMA[27] (and not to FEMA <u>and</u> the

2  various States' insurance commissioners), all NFIA jurisdictional and rule making statutes

3  plainly express an intent by Congress that <u>all</u> control over the NFIP remain exclusively within

4  the Executive and Judicial branches of the federal government. See also 42 U.S.C. §4019.

5  where Congress expressly placed all rule making authority in the <u>Federal</u> Insurance

6  Administrator, and *not* in that Administrator <u>and</u> the 50 State insurance commissioners.  As

7  explained in *Friedman v. South Carolina Ins. Co.*, 855 F.Supp. 348 (M.D.Fla.1994), federal

8  law preempts the field and state law remedies such  as those sought by the Plaintiffs is not

9  available.[28]  In *West*, the Fifth Circuit noted the following about this "child of Congress" and

10 its applicable regulations:

11         Congress has undertaken to regulate the claims adjustment process and
           judicial review thereof, and nowhere in these statutory sections or in the
12         regulations implementing them, 24 C.F.R. §1912.21, 1912.22 (1977), is there
           any mention of use of the statutory law of the forum state on any issue.  *West,*
13         *supra* at 880.

14 The Ninth Circuit in *Flick* quoted from the same section of *West* from which the above-

15 quoted passage was taken.  *Flick,* at 390.  The Congressional findings enunciated in 42 U.S.C.

16 §§4001 and 4002 make clear that by enacting the NFIP, Congress preempted the application

17 of state law to flood insurance to protect the public fisc:

18         [T]he principal purpose in enacting the Program was to reduce, by
           implementation of adequate land use controls and flood insurance, the massive
19         burden on the federal fisc of the ever-increasing federal flood disaster
           assistance.  *Till v. Unifirst Fed. Savings & Loan Association*, 653 F.2d 152, 159
20         (5th Cir. 1981).

21 In *West,* at 881, the Fifth Circuit noted the following about the application of state law as to

22 Plaintiff's claims for penalties and attorney's fees as allowed by the laws of the State of

23 Louisiana:

24         Since the flood insurance program is a child of Congress, conceived to
           achieve policies which are national in scope, and since the federal government
25         participates extensively in the program both in a supervisory capacity and

26 _____

27 [27] 42 U.S.C. §§4013, 4017 and 4019.

28 [28]  See also *Texas Landowners Rights Assoc. v. Harris,* 453 F. Supp. 1025, 1030 (D.C.
   1978), *aff'd,* 598 F.2d 311 (D.C. Cir. 1979), *cert. denied,* 444 U.S. 927 (1979) where the
   court explained that the NFIA is a "carrot and a stick" federal program.

financially, it is clear that the interest in uniformity of decision present in this case mandates the application of federal law. Cf. *First National Bank, Henrietta v. Small Business Administration*, 429 F.2d 280 (5th Cir. 1970). Thus, a prevailing plaintiff in a suit on a flood insurance policy issued pursuant to the National Flood Insurance Act is not entitled to recover the statutory penalty and attorney's fees allowed by state insurance law for arbitrary denial of coverage.

### 2.    *Conflict Preemption*

It is within this test that the need for preemption becomes most apparent.  It is on the basis of conflict preemption that the *Scherz* Court held that extracontractual state law causes of action related to the handling of claims under the NFIA are preempted by federal law. *See Scherz v. South Carolina Insurance Co.*, 112 F.Supp.2d 1000, 1007-1010 (C.D.Cal. 2000); *see also* Judge Collins' discussion in *Pecarovich*, *supra* explaining that *Scherz* is controlling. The Court is asked to consider (1) the profit-based motives of insurance companies which the various States' bad faith claims handling statutes are designed to regulate, and (2) the stark differences between how normal insurance claims are analyzed and how SFIP claims are analyzed.  With regard to these two points, please note the following:  in normal private lines of insurance, if an insurer does not pay a claim, it obviously makes a profit thereby in the form of retained earnings.  The making of such a profit, where inappropriate, is exactly the situation which the various States' bad faith claims statutes seek to regulate.  However, in the context of the NFIA, WYO Program carriers have no risk whatsoever, and act merely as the "fiduciary" and/or "fiscal agent" of the United States.  See 42 U.S.C. §4071(a)(1) and 44 C.F.R. §62.23(f).  Notably, the entire "Arrangement" between FEMA and the WYO Program carriers may be found in its entirety at 44 C.F.R. Pt. 62 App. A.

That "Arrangement" specifically delineates that WYO Program carriers are paid a 3.3% commission on all claims payments, and, that all claims payments are "binding" upon the Federal Insurance Administrator.[29]  Accordingly, and has been uniformly held by the courts, the WYO carrier makes its profit *by paying a claim*, not by denying it.  As was recognized by the Ninth Circuit in *Flick, supra* at 392:

---

[29]   44 C.F.R. §§62.23(i)(1) and (6), and App. A, Art. II(F) and Art. III(C) and (D).

DEFENDANT'S NOTICE & MEMO IN SUPPORT OF MOTION TO DISMISS STATE LAW CLAIMS

1    Under the NFIP regulations, WYO insurers also pay claims out of the National
     Flood Insurance Fund. The federal government is a guarantor and assumes
2    full liability for flood insurance policies that are issued by WYO insurers. See
     44 C.F.R. §62.23(f); 64 Fed. Reg. 27705, 27708 (1999)(stating that WYO
3    insurers "do not have to pay for reinsurance for their flood business since the
     federal government assumes the liability for flood losses.").
4

5    In short, if the various States' claims handling statutes designed to prevent inappropriate

6    profits are imposed upon FEMA's WYO Program carriers, which make their profit by paying

7    claims, then such a result will impede FEMA's ability to cause WYO carriers to only make

8    that profit which is properly attainable through strict enforcement of FIA regulations. *Scherz*

9    at 1008.

10

11        C.    Types of Extra-Contractual Claims Rejected by Courts

12            1.    *Breach of the Duty of Good Faith and Fair Dealing.*

13        The WYO carrier is the "fiduciary" of the government, not of the insured. 44 C.F.R.

14   Pt. 62.23(f). At the heart of the "good faith" doctrine the Plaintiff is advancing is the "special

15   relationship" between insurer and insured, normally viewed as fiduciary in nature. At bar,

16   USAA's fiduciary responsibilities run in the opposite direction. *Id.* It is undisputed that

17   Plaintiffs cannot pursue anything other than a Breach of Contract claim against FEMA, if the

18   Plaintiffs' SFIP was issued directly by and through FEMA as opposed to its fiscal agent

19   (USAA). However, FEMA has repeatedly stressed that there should be no special rules

20   based upon whether or not it is a FEMA issued SFIP, or a WYO Carrier issued SFIP. As

21   noted in *Scherz:*

22        It is undisputed that if FEMA had issued the SFIP directly to Scherz, his sole
          remedy for any alleged claims mishandling would be a cause of action for
23        breach of contract. To permit Scherz to recover for tortious breach of the
          implied covenant of good faith and fair dealing against the WYO insurer for
24        alleged claims mishandling would create an internal inconsistency within an
          otherwise balanced statutory and regulatory structure.
25

26        *Scherz v. South Carolina Insurance Co.,* 112 F.Supp.2d 1000, 1009 (C.D.Cal. 2000)

27                              *    *    *    *

28        The Ninth Circuit's concern that WYOs not be subjected to "special rules" counsels in
     favor of finding conflict preemption here, for to allow an insured to bring a state law

                              DEFENDANT'S NOTICE & MEMO IN SUPPORT
                         -19-  OF MOTION TO DISMISS STATE LAW CLAIMS

1   tort claim for breach of the implied covenant of good faith and fair dealing against a
    WYO insurer but not against FEMA would amount to a special rule benefitting only
2   some insureds. [FN10]

3   FN10. Moreover, for courts to entertain state-based causes of action involving claims
    handling could require application of fifty different state laws, which would also
4   frustrate the congressional goal of creating a uniform system for flood insurance.

5   *Scherz* at 1009.

6        Furthermore, as noted by the Court in *Scherz,* dismissal of the tort claims for

7   breach of a duty of good faith and fair dealing would not frustrate the purposes of the NFIP,

8   and allowing such claims makes little sense given the profit-based incentives of a WYO

9   Carrier in the payment of a claim. *See Scherz v. South Carolina Insurance Co.,* 112

10  F.Supp.2d 1000 (C.D.Cal. 2000)

11

12              **2.    *Emotional Distress Claims***

13       Emotional distress claims represent another state law based claim that has been

14  precluded under NFIP case law. For instance the courts in *Novikov vs. Allstate* 2001 WL

15  880852 (E.D. Cal. 2001), *Mason v. Witt* 74 F.Supp.2d 955 (E.D. Cal. 1999) and *Miller v.*

16  *Omaha Property & Cas. Ins. Co.* 1997 WL 33833419, (S.D.Tex.,1997) all dismissed claims for

17  emotional distress from claims brought in relation to a Standard Flood Insurance Property.

18  As explained in *Miller:*

19       Another reason exists for denying the Millers' claims for state law based
         punitive damages and damages for mental anguish. Damages recoverable
20       under the NFIA are "pecuniary in nature, not personal, and the amount is
         based upon the readily ascertainable value of services and property." *West,* 573
21       F.2d at 883. Punitive damages and damages for emotional distress clearly are
         personal, rather than pecuniary, in nature.
22
    *Miller ,* 1997 WL 33833419 at *4
23

24              **3.    *Punitive Damages of Any Type Are Not Recoverable Under The Act***

25       There is no authorization within the statutes or the regulations of the NFIA (42

26  U.S.C. § 4001, *et seq.*) or the controlling sections of Title 44 of the Code of Federal

27  Regulations (44 C.F.R. Part 59, *et seq.*) which allow the recovery of any form of punitive

28  damages, or which allows recovery of punitive damages under state law. *See Scherz v. South*

1  *Carolina Insurance Co.*, 112 F.Supp.2d 1000 (C.D.Cal. 2000); *Pecarovich, supra* at 989-990;

2  *Eddins*, at 753. Punitive damages punish a defendant who has acted willfully or in gross

3  disregard of a plaintiff's rights. Punitive damages are designed to teach the wrongdoer and

4  deter others from acting similarly. *Id.*; *see also*, Prosser, *The Law of Torts* §2 (1971).

5  According to the *Eddins*:

6      The threat of punitive damages deters insurance companies, who would be
       otherwise unjustly enriched, from arbitrarily denying claims that rightfully
7      should be paid. **A private insurer does not have a pecuniary incentive to deny
       a claim under a policy issued through the National Flood Insurance Act. Any**
8      **claim would be paid by the Federal Government** ...[Therefore] allowing
       punitive damages to be recoverable under the [NFIA] would simply defeat the
9      philosophy behind the program. (emphasis added).

10  *Eddins* at 754.

11      Therefore, allowing punitive damages to be imposed upon Defendant USAA would

12  be contrary to the NFIA and defeat the philosophy behind the NFIP. *See 3608 Sounds*

13  *Avenue*. USAA therefore asks that the claims for exemplary damages and special damages

14  be dismissed.

15

16          4.  *Interest is Not Recoverable.*

17      The very first decision to discuss the appropriateness of interest on flood claims,

18  whether pre-judgment or post-judgment, was *West, supra.* In *West*, the Fifth Circuit ruled

19  that prejudgement interests must be awarded to a prevailing plaintiff in a case under the

20  NFIA. However, the *West* decision was decided when the NFIP was operated under "Part

21  A" of the Act, 42 U.S.C. §§ 4051-4056, which authorized an incorporated underwriting pool

22  of private insurance companies to form the National Flood Insurance Association. The *West*

23  court, in reviewing Part A of the Act, held that despite the federal government's financial

24  stake in the program, the Association was not "cloak[ed] . . . with the robe of sovereign

25  immunity from awards of any interest." *West*, 573 F.2d at 882. As such, in *West*, the Fifth

26  Circuit held that, since the private insurers who issued NFIP polices at that time were not

27  protected by the government's sovereign immunity, fair compensation to the prevailing

28

1  plaintiff could only be achieved by awarding prejudgment interest on those polices issued

2  under Part A of the Act.  573 F.2d at 883.

3      All of this changed when the Program was moved into "Part B."  The result of this

4  move was that the Secretary of HUD took control of all operational responsibilities of the

5  Program in 1976 and then FEMA took over in 1978.  As a result of this important change of

6  control, both the Fifth Circuit and Tenth Circuit have determined that interest cannot be

7  awarded in claims under Part B of the program. *In re Estate of Lee v. NFIP*, 812 F.2d 253,

8  255 (5th Cir. 1987); *Sandia Oil Co., Inc. v. Beckton*, 889 F.2d 258, 263 (10th Cir. 1989).  In this

9  vein, the Fifth Circuit in *Estate of Lee* noted that <u>although it was appropriate to award</u>

10  <u>interest on flood insurance policies issued by the private insurers under Part A of the Act,</u>

11  <u>such an award, which would now be a direct charge on the public treasury, is no longer</u>

12  <u>possible without express congressional consent.</u>  *In re Estate of Lee*, 812 F.2d at 256.

13      The U.S. Eleventh Circuit, in *Newton v. Capital Assurance Corp.,* 245 F.3d 1306

14  (11th Cir., 2001), held that awards of interest were barred by the "no-interest rule" because,

15  at bottom, it was U.S. Treasury funds at stake regardless of whether FEMA or a Write Your

16  Own Carrier was the defendant.  The Eleventh Circuit noted the following in *Newton, supra*

17  at 1312:

> But the reality lying behind these observations robs them of their strength.  A WYO company may write a policy in its name, but FEMA dictates the terms. And preliminary responsibility is a mirage when the federal government, through FEMA, will always foot the full bill in the end.  Giving these factors controlling weight would elevate the form of the insurance system over its substance.  We thus conclude that prejudgment interest awards against WYO companies are direct charges on the public treasury forbidden by the no-interest rule and reverse the part of the judgment awarding such interest.[30]

### 5.    *Consequential Damages Are Excluded.*

24      Succinctly stated, Article V(A) of the Standard Flood Insurance Policies excludes the

25  damages resulting from loss of use of the property, loss of access to the property, lost revenue

26  or profits, loss from interruption of business or production, and "any other economic loss"

27

28

[30] Attached as Exhibit 13.

1   suffered by the insured.  At least two courts have held that such claims are not recoverable.

2   *See Messa, supra* and *Estate of Lee, supra.*

3

4   **V.    CONCLUSION**

5       Based on the arguments herein, Defendant contends that under clearly established

6   jurisprudence, Plaintiffs' state law based claims are preempted and barred by federal law, and

7   federal law does not allow for recovery of those items of damages made subject of this

8   Motion.  Accordingly, Defendants submit this Rule 12(b)(6) Motion to Dismiss all claims of

9   the Plaintiffs, other than the breach of contract claim.

10      WHEREFORE, Defendant, USAA GENERAL INDEMNITY COMPANY,

11  respectfully requests that the Court issue an Order dismissing all of the Plaintiffs' extra-

12  contractual claims for damages as stated in the Plaintiffs' Complaint, leaving only the

13  remaining breach of contract claim to proceed.

14

15

16  DATED: September 12, 2008                Respectfully submitted,

17

18

19                                          Gary R. Gleason
                                            Local Counsel for Defendant
20                                          USAA GENERAL INDEMNITY COMPANY

21

22

23

24

25

26

27

28