# EXHIBIT 10

DECL OF GARY R. GLEASON IN
SUPP. OF DEF.'S MTN TO DISMISS
STATE LAW CLAIMS

PAGES 1 - 33

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE MAXINE M. CHESNEY, JUDGE

BEVERLY AXELROD,                )
                                )
            PLAINTIFF,          )
                                )
  VS.                           )        NO. C 99-2663 MMC
                                )
BANKERS INSURANCE COMPANY,      )
                                )
            DEFENDANT.          )
_____)

COPY

                    SAN FRANCISCO, CALIFORNIA
                    FRIDAY, JANUARY 26, 2001

                TRANSCRIPT OF PROCEEDINGS

APPEARANCES:


FOR PLAINTIFF:          LAW OFFICES OF DAVID J. REYNOLDS
                        44 MONTGOMERY STREET, SUITE 1000
                        SAN FRANCISCO, CALIFORNIA  94104
                    BY: DAVID J. REYNOLDS


FOR DEFENDANT:          FARBSTEIN & BLACKMAN
                        1820 GATEWAY DRIVE, SUITE 320
                        SAN MATEO, CALIFORNIA  94404-4024
                    BY: GARY R. GLEASON


                        NIELSEN LAW FIRM
                        2121 AIRLINE DRIVE, SUITE 200
                        METAIRIE, LOUISIANA  70001
                    BY: GERALD J. NIELSEN


REPORTED BY:            LEO T. MANKIEWICZ, CSR 5297 RMR, CRR
                        OFFICIAL REPORTER

1    FRIDAY, JANUARY 26, 2001                              9:10 A.M.

2

3              THE CLERK:  CALLING CIVIL CASE NUMBER 99-2663,

4    BEVERLY AXELROD VERSUS BANKERS INSURANCE.  WILL COUNSEL PLEASE

5    STEP FORWARD AND STATE YOUR APPEARANCES FOR THE RECORD.

6              THE COURT:  GOOD MORNING.

7              MR. NIELSEN:  GOOD MORNING, YOUR HONOR.  GERRY

8    NIELSEN ON BEHALF OF BANKERS, ALONG WITH GARY GLEASON, ALSO ON

9    BEHALF OF BANKERS.

10             MR. GLEASON:  GOOD MORNING.

11             MR. REYNOLDS:  AND DAVID REYNOLDS APPEARING ON

12   BEHALF OF BEVERLY AXELROD, PLAINTIFF.

13             THE COURT:  MR. NIELSEN, YOU CAME IN FROM LOUISIANA

14   FOR THIS HEARING?

15             MR. NIELSEN:  YES, YOUR HONOR.

16             THE COURT:  OKAY.  THIS MATTER CONCERNS THE QUESTION

17   OF PREEMPTION.  YOU HAVE BOTH PROVIDED YOUR TAKE, IF YOU WILL,

18   ON THE AUTHORITIES THAT ARE OUT THERE.  I'M LOSING MY VOICE, SO

19   I'LL TRY NOT TO MAKE THIS TOO LENGTHY, ALTHOUGH SINCE WE HAD

20   SOMEONE WHO CAME AS FAR AS THEY DID, I DON'T WANT TO

21   SHORTCHANGE THEM ON THE LENGTH OF THE HEARING.

22             IT WOULD SEEM TO ME THAT THE ISSUE THAT WOULD BE

23   PERHAPS PREFERABLE TO FOCUS ON IS THAT OF CONFLICT PREEMPTION.

24   THE DEFENDANT IS NOT PRESSING THE QUESTION OF EXPRESS

25   PREEMPTION AND DID NOT SPEND A GREAT DEAL OF TIME DISCUSSING

1    THE ISSUE OF FIELD PREEMPTION.  I THINK THE DEFENDANT DID

2    STATE -- RECOGNIZES THEIR STRONGEST POSITION IS ON CONFLICT

3    PREEMPTION, AND I WOULD SUGGEST THAT THAT'S WHERE WE DEVOTE OUR

4    RESOURCES THIS MORNING, PARTICULARLY SINCE MINE ARE WANING, AS

5    YOU PROCEED HERE.

6         I'D LIKE TO ASK MR. REYNOLDS A COUPLE OF QUESTIONS

7    ABOUT HIS PLEADINGS, IF I MIGHT, AND THEN I WOULD PROCEED TO

8    HEAR FROM YOU, NOT AT TOO GREAT A LENGTH.

9         THERE ARE TWO -- WELL, ACTUALLY, I MIGHT JUST

10   PRESENT MY FIRST QUESTION TO MR. NIELSEN.  WILL YOU BE ARGUING

11   IT ACTUALLY, MR. NIELSEN?

12        MR. NIELSEN:  YES, YOUR HONOR.

13        THE COURT:  OKAY.  THERE ARE TWO CAUSES OF ACTION,

14   AS YOU KNOW, A RELATIVELY STRAIGHTFORWARD BREACH OF THE

15   INSURANCE CONTRACT --

16        MR. NIELSEN:  CORRECT.

17        THE COURT:  -- AND THEN A BAD FAITH CLAIM, BREACH OF

18   THE COVENANT OF GOOD FAITH AND FAIR DEALING, IN THE SECOND

19   CAUSE OF ACTION.

20        IS EVERYONE INTERPRETING THE FIRST CAUSE OF ACTION

21   TO BE A CLAIM UNDER THE NATIONAL FLOOD INSURANCE ACT?

22        MR. NIELSEN:  I BELIEVE SO, YES.

23        THE COURT:  IS THAT CORRECT, ALSO?

24        MR. REYNOLDS:  YES, YOUR HONOR.

25        THE COURT:  I GUESS I WANTED TO PRESENT THAT TO

```
1    MR. REYNOLDS ALSO.

2              MR. NIELSEN:  YES.

3              THE COURT:  SO THE ONLY CHALLENGE, WHEN WE SPEAK

4    ABOUT EXTRA-CONTRACTUAL CAUSES OF ACTION, IS AS TO THE SECOND

5    ONE.

6              MR. NIELSEN:  CORRECT.  WHAT WE'RE ASKING FOR IS A

7    DISMISSAL OF ANYTHING OTHER THAN THE CLAIM FOR U.S. TREASURY

8    BENEFITS UNDER THE POLICY.

9              THE COURT:  OKAY.  ARE THERE ANY, BY THE WAY,

10   RESTRICTIONS ON THE FIRST CAUSE OF ACTION AS A CLAIM UNDER THE

11   FLOOD INSURANCE ACT THAT WOULD NOT BE PRESENT UNDER THE --

12   EXCUSE ME -- UNDER A TRADITIONAL STATE BREACH OF CONTRACT

13   CLAIM?  FOR EXAMPLE, IS A JURY ALLOWED --

14             MR. NIELSEN:  NO, A JURY IS NOT ALLOWED, YOUR HONOR,

15   AND THERE IS A PENDING MOTION TO QUASH JURY DEMAND, WHICH I

16   BELIEVE IS NOT OPPOSED.

17             THE COURT:  OKAY, IT WAS NOT OPPOSED.  HOWEVER, IF

18   ONE HAD AN EXTRA-CONTRACTUAL CLAIM SUCH AS THE SECOND CAUSE OF

19   ACTION THAT WENT FORWARD, THEN I SUPPOSE TECHNICALLY WE COULD

20   HAVE A JURY ON THAT CAUSE OF ACTION.

21             MR. NIELSEN:  I WOULD RESPECTFULLY DISAGREE, YOUR

22   HONOR, AND THAT'S GOING TO FLOW FROM THE TEXT OF OUR ARGUMENT,

23   AS TO WHY NOT.

24             THE COURT:  OKAY, THAT WOULD BE FINE, BUT THERE WAS

25   ACTUALLY NO OPPOSITION TO THE MOTION TO QUASH.
```

1          MR. NIELSEN:  CORRECT.

2          THE COURT:  OKAY.  THEN GOING BACK TO THE SECOND

3    CAUSE OF ACTION, THIS IS PLED AS A POST-CONTRACTUAL BEHAVIOR,

4    IF YOU WILL, MISHANDLING OF THE CLAIMS, FAILURE TO ACT IN A

5    TIMELY FASHION, FAILURE TO INVESTIGATE PROPERLY, AND FAILING TO

6    MISS THE OBVIOUS, THE ALLEGED COVERAGE.  ALL RIGHT, THIS IS

7    FAIRLY TRADITIONAL BAD FAITH PLEADING.

8          THERE WERE A COUPLE OF PARAGRAPHS, HOWEVER, I WANTED

9    TO TAKE UP WITH MR. REYNOLDS.  THEY ARE 17.11 AND 17.22, AND

10   THEY APPEAR RESPECTIVELY ON PAGES 8 AND 10.  DO YOU HAVE A

11   COPY, ALSO, OF THE COMPLAINT?  MR. GLEASON, OVER AT THE TABLE,

12   MIGHT.

13         MR. NIELSEN:  I DO.

14         THE COURT:  17.1 IS ALLEGED AS, "MISREPRESENTING TO

15   PLAINTIFF PERTINENT FACTS OR INSURANCE POLICY PROVISIONS

16   RELATING TO ANY COVERAGES IN ISSUE."  THAT SENTENCE STARTING

17   WITH "MISREPRESENTING" AND ENDING AT "ISSUE" IS A QUOTE.

18         YOU KNOW, WE DO HAVE ONE CASE OUT OF THE NORTHERN

19   DISTRICT, THE _DAVIS_ CASE, IN WHICH JUDGE ALSUP DID MAKE CERTAIN

20   FINDINGS ABOUT ALLEGED MISREPRESENTATIONS AS TO THE MANNER IN

21   WHICH THE CLAIM WOULD HAVE TO BE PRESENTED, THE DEFENDANT THERE

22   RAISING A PROCEDURAL CHALLENGE RATHER THAN A SUBSTANTIVE ONE TO

23   THE CLAIM.

24         I DON'T UNDERSTAND THE DEFENDANT IN THIS CASE TO BE

25   RAISING ANY CHALLENGE TO THE METHOD IN WHICH THE PLAINTIFF

```
1    BROUGHT THE CLAIM, BUT IF THEY WERE, THEN I WOULD WANT TO FIND

2    OUT IF THE PLAINTIFF IS ASSERTING THERE WAS SOME

3    MISREPRESENTATION IN THAT CONNECTION, THAT WOULD SQUARELY RAISE

4    THE DAVIS ISSUE.  I'M NOT SAYING I WOULD NECESSARILY DECIDE IT

5    AS JUDGE ALSUP DID, BUT I'D LIKE TO KNOW IF WE HAVE ONE, SO I'M

6    ASKING, I GUESS, BOTH OF YOU IN THAT RESPECT.

7              MR. NIELSEN:  FROM MY PERSPECTIVE, I SEE NOTHING

8    THAT SAYS THAT PLAINTIFF IS RELYING ON THE DAVIS LINE IN THIS,

9    BUT AT THE SAME TOKEN, I WAS PERSONALLY INVOLVED IN DAVIS.  I

10   KNOW THAT FEMA REWROTE EVERY PERSON'S POLICY IN THE WHOLE

11   COUNTRY TO UNDO DAVIS, AND I'M FULLY PREPARED TO EXPLAIN TO YOU

12   WHY DAVIS IS DEAD LETTER, AND ONE OF THE THINGS I WILL DISCUSS

13   THIS MORNING.

14             THE COURT:  IS THAT ONE OF THE PROVISIONS THAT DOES

15   NOT ALLOW FOR WAIVER, FOR EXAMPLE, IN THE ABSENCE OF AN EXPRESS

16   WAIVER?

17             MR. NIELSEN:  I WOULD HAVE TO EXPLAIN IN THE CONTEXT

18   OF THE ARGUMENT, BUT YOU CAN'T HOLD THAT A FAILURE OF ONE OF

19   FEMA'S WRITE-YOUR-OWN-PROGRAM CARRIERS TO INFORM THEM OF A

20   PROVISION OF FEDERAL LAW IS AN ACTIONABLE TORT UNDER STATE LAW.

21   THERE'S A SUPREME COURT CASE DIRECTLY ON POINT.

22             THE COURT:  WELL, MAYBE I'LL WAIT TO SEE, FIRST OF

23   ALL, --

24             MR. NIELSEN:  IF WE HAVE THAT ISSUE.

25             THE COURT:  -- IF YOU RAISE THAT ISSUE.  I COULD SEE
```

1    HOW YOU COULD PRECLUDE COVERAGE UNDER THE POLICY THAT WOULD NOT

2    NECESSARILY PRECLUDE A STATE LAW CLAIM, BUT LET ME TURN TO

3    MR. REYNOLDS FOR JUST A MOMENT IN THAT RESPECT.

4             WHAT HAD YOU INTENDED TO ALLEGE BY THIS

5    "MISREPRESENTING" PARAGRAPH, OR IS THIS JUST BOILERPLATE FROM A

6    STANDARD CASE, SO TO SPEAK?

7             MR. REYNOLDS:  YOUR HONOR, IT GOES TO THE TWO ISSUES

8    HERE, IS THE REASON WHY THERE IS THE LAUNDRY LIST, SO TO SPEAK,

9    OF CLAIMS HERE, OR ALLEGATIONS.  IT IS ONE WITH REGARDS TO THE

10   PROCUREMENT OF THE INSURANCE WHEN THE INSURANCE IS TO BE

11   PURCHASED --

12            THE COURT:  ALL RIGHT, LET ME STOP YOU, THEN.  THIS

13   IS PLEADED NOT IN THE CONTEXT OF A FRAUD IN THE PROCUREMENT

14   CLAIM.  IT IS PLEADED AS MISREPRESENTATION IN THE COURSE OF

15   CLAIMS HANDLING.

16            WHEN YOU TALK ABOUT BREACH OF, IN EFFECT, A COVENANT

17   THAT'S POST-CONTRACTUAL BEHAVIOR, SO ARE YOU GOING TO ALLEGE OR

18   DO YOU PLAN TO ALLEGE A FRAUD IN THE PROCUREMENT CLAIM?  AND IF

19   YOU ARE, YOU WOULD HAVE TO PLEAD IT WITH PARTICULARITY.  YOU

20   CANNOT PLEAD IT AS YOU HAVE HERE.

21   (DISCUSSION OFF THE RECORD WITH AN ATTORNEY IN ANOTHER MATTER.)

22            THE COURT:  GO AHEAD, PLEASE.

23            MR. REYNOLDS:  YOUR HONOR, AS TO 17.11, IT IS THAT

24   THERE WERE MISREPRESENTATIONS MADE TO THE PLAINTIFF WITH REGARD

25   TO POLICY PROVISIONS AS TO WHETHER THERE WAS COVERAGE UNDER

1    CERTAIN INSTANCES.

2              THE COURT:  ARE THESE MISREPRESENTATIONS MADE -- IF

3    ALL YOU'RE SAYING IS THEY LIED TO HIM ABOUT WHETHER HE HAD

4    COVERAGE AFTER HE MADE HIS CLAIM, THAT'S JUST A DISPUTE

5    BASICALLY OVER WHETHER HE'S COVERED.

6              MR. REYNOLDS:  CORRECT.

7              THE COURT:  OKAY.  IF THAT'S WHAT YOU'RE SAYING, I

8    THINK THAT THAT'S JUST PART OF YOUR CLAIM THAT THEY ACTED IN

9    BAD FAITH IN NOT PAYING HIM.

10             MR. REYNOLDS:  CORRECT.

11             THE COURT:  YOU'RE SAYING, YOU KNEW YOU HAD COVERAGE

12   AND YOU KNEW HE HAD COVERAGE -- WELL, IT'S NOT HE --

13             MR. REYNOLDS:  BASED UPON THE DATA, BASED UPON THE

14   POLICY, BASED UPON THE BOOKLET PROVIDED, THAT THERE WAS

15   COVERAGE.

16             THE COURT:  OKAY, THAT MISREPRESENTATION, I THINK,

17   WRAPS INTO THE DENIAL ITSELF.  THEN THIS ISN'T A CLAIM THAT

18   THEY MADE CERTAIN STATEMENTS IN AN EFFORT TO INDUCE A PERSON TO

19   PURCHASE A POLICY.

20             MR. REYNOLDS:  NO, YOUR HONOR.

21             THE COURT:  OKAY.  LET'S GO TO 17.22, IF WE COULD.

22   THAT READS, "ENGAGING IN FALSE AND/OR DECEIVING AND/OR BUSINESS

23   PRACTICES."  AGAIN, I WAS CONCERNED THAT YOU MAY BE TRYING TO

24   ALLEGE A PRE-CONTRACTUAL ENCOUNTER OF SOME SORT, OR EVENT.  I

25   WAS GOING ASK YOU ABOUT THAT.

1          MR. REYNOLDS:  THAT DOES FLOW, YOUR HONOR, TO THE

2     BOOKLET.  WHEN YOU PROCURE FLOOD INSURANCE, YOU DO NOT SEE THE

3     POLICY FOR SEVERAL MONTHS --

4          THE COURT:  OKAY.

5          MR. REYNOLDS:  -- AFTER IT HAS BEEN PROCURED, BUT

6     THERE IS A BOOKLET THAT IS PUBLISHED, AND PROVIDED BY THE

7     WRITE-YOUR-OWN CARRIER, TO ALERT THE POTENTIAL POLICY HOLDER OF

8     THE COVERAGE THAT IS AVAILABLE.

9          THE COURT:  OKAY.

10         MR. REYNOLDS:  AND IT IS OUR BELIEF IN THE

11    ALLEGATIONS THERE THAT IN THAT BOOKLET IT PROVIDED FOR COVERAGE

12    OF THIS PARTICULAR TYPE OF AN INSTANCE, WHICH IS, AND HAS BEEN,

13    IDENTIFIED AS TIDAL ACTION, WAVE ACTION.

14         THE COURT:  NOW, IS THE BOOKLET THAT IS ISSUED TO

15    PROSPECTIVE POLICY PURCHASERS PUBLISHED INDEPENDENTLY BY THE

16    WRITE-YOUR-OWN CARRIER --

17         MR. REYNOLDS:  IT IS NOT.

18         THE COURT:  -- OR BY FEMA --

19         MR. REYNOLDS:  IT IS PROVIDED BY FEMA, WHICH

20    PROVIDES IN GENERAL TERMS WHAT IS COVERED, WHAT IS NOT COVERED,

21    TO GIVE THE PERSON SOME IDEA OF WHAT THEY MIGHT EXPECT WHEN

22    THEY ACTUALLY GET THE POLICY.

23         THE COURT:  OKAY.  AGAIN, THEN, UNLESS YOU ARE --

24    WELL, IF YOU'RE CHALLENGING FEMA'S STATEMENTS AS A FRAUD IN THE

25    INDUCEMENT, THAT WOULD BE AN INTERESTING LAWSUIT.  I DON'T KNOW

1    IF YOU CAN BRING THAT OR NOT, BUT IT WOULD HAVE TO BE PLEADED

2    AS A FRAUD CLAIM.  IF ALL YOU'RE SAYING IS THAT WE ARE COVERED,

3    YOU SAY WE'RE COVERED, AND WE ARE COVERED, AS OPPOSED TO, ALL

4    RIGHT, WE CONCEDE WE'RE NOT COVERED BUT YOU TOLD US WE WERE AT

5    THE BEGINNING, I UNDERSTAND PEOPLE CAN PLEAD IN THE ALTERNATIVE

6    AND SOMETIMES INCONSISTENT THEORIES, BUT THE FRAUD CLAIM WOULD

7    ACTUALLY ALMOST CONCEDE THAT THERE WAS NO COVERAGE, AND THEN

8    ASSERT THAT SOMEONE SAID, NONETHELESS, THAT WE WERE AT THE

9    BEGINNING.

10        I DON'T THINK YOU'RE REALLY SAYING THAT.  IT SOUNDS

11    LIKE WHAT YOU'RE REALLY SAYING IS THAT, MY CLIENT DOES HAVE

12    COVERAGE, YOU TOLD US THAT IN THE BOOKLET, IT'S CLEAR THAT SHE

13    HAS COVERAGE, AND YET, YOU CONTINUE TO DENY COVERAGE.

14        MR. REYNOLDS:  CORRECT.  THESE ARE ALL PART AND

15    PARCEL OF THE THINGS THAT SHE WAS PRIVY TO, WHICH WAS BEFORE,

16    IN THE PROCUREMENT OF THE INSURANCE, BUT WAS LED TO BELIEVE BY

17    THOSE DOCUMENTS THAT THERE WAS COVERAGE, AND THAT SHE CONTINUED

18    TO BELIEVE THAT SHE DID HAVE COVERAGE, THROUGH THE PROCESS OF

19    THE CLAIMS ADJUSTMENT.

20        THE COURT:  WELL, YOUR POSITION IS SHE DOES HAVE

21    COVERAGE.  IN OTHER WORDS, YOUR POSITION IS THAT THERE IS

22    COVERAGE HERE, NOT THAT SOMEONE REPRESENTED SOMETHING TO HER

23    THAT IS CONTRARY TO THE ACTUAL COVERAGE.

24        NOW, IT SOUNDS LIKE YOU ARE USING THE BOOKLET AS AN

25    ADMISSION, ALMOST; IN OTHER WORDS, TO SAY THAT YOU YOURSELF

1    HAVE DESCRIBED THE POLICY AS COVERING THIS TYPE OF EVENT, SEE

2    PARAGRAPH 2, OR WHATEVER IT IS.  I DON'T REALLY KNOW HOW THE

3    BOOKLET READS.

4          MR. REYNOLDS:  THE BOOKLET READS IN GENERAL TERMS --

5    IN GENERIC TERMS WITH REGARD TO COVERAGE.  IT'S JUST BASIC

6    POLICY LANGUAGE.

7          THE COURT:  ALL RIGHT.  I WOULD THINK THAT THERE MAY

8    BE A DIFFERENT ANALYSIS IF THERE WERE A FRAUD IN THE

9    PROCUREMENT CLAIM.  AT LEAST THE SPENCE COURT HAS TAKEN THAT

10   POSITION, AND OTHERS HAVE RECOGNIZED, I THINK, THAT

11   DISTINCTION, AS WELL.

12          IN THIS INSTANCE, I DO NOT READ YOUR COMPLAINT AS

13   PLEADING FRAUD IN THE PROCUREMENT.  DO YOU BELIEVE YOU COULD

14   PLEAD SUCH A CLAIM IF YOU WERE GIVEN LEAVE TO AMEND, OR ARE WE

15   BASICALLY SPEAKING ABOUT WHAT I WILL CALL A TRADITIONAL BAD

16   FAITH CLAIM, KNOWING OR NEGLIGENT FAILURE TO PAY?

17          MR. REYNOLDS:  YOUR HONOR, WITH REGARDS TO, AS FAR

18   AS THE BOOKLET, THE BOOKLET MAY WELL GO TO THE NATURE OF A

19   PROCUREMENT OF THE INSURANCE, OF HAVING A SITUATION IN WHICH A

20   POTENTIAL INSURED IS RELYING ON THE LANGUAGE OF THAT BOOKLET,

21   NOT HAVING THE POLICY, AND AGAIN, WITH THE WRITE-YOUR-OWN

22   CARRIER, THE BOOKLET IS PROVIDED BY FEMA AND THE FEDERAL

23   GOVERNMENT TO ALERT THE POTENTIAL INSURED AS TO THE COVERAGE.

24          THE COURT:  OKAY, I THINK THAT WHAT I'M ASKING YOU

25   IS, DO YOU BELIEVE YOU CAN ACTUALLY PLEAD A FRAUD CLAIM, OR ARE

1    YOU SIMPLY TALKING ABOUT THE REASONABLE EXPECTATIONS OF THE

2    INSURED, WHICH IS THE TRADITIONAL CALIFORNIA CONCEPT IN

3    INSURANCE LAW FOR INTERPRETATION OF POLICIES?

4              MR. REYNOLDS:  WELL, I GUESS, YOUR HONOR, IT WOULD

5    PROBABLY -- IT MAY WELL BE IN BOTH AREAS.  ONE IS THE FACT

6    THAT, AS STATED HERE, IS THAT THE INSURED HERE, THE PLAINTIFF,

7    FELT THAT SHE HAD THE SPECIFIC COVERAGE AS INDICATED IN THE

8    BOOKLET AND POLICY, AND BELIEVED THAT TO BE THE CASE THROUGHOUT

9    THE ADJUSTMENT PHASE.

10             THE COURT:  WELL, WHAT I'M ASKING YOU IS, IN GOOD

11   FAITH, CAN YOU PLEAD, OR DO YOU BELIEVE YOU CAN PLEAD, A FRAUD

12   IN THE PROCUREMENT CLAIM?  BECAUSE YOU HAVEN'T PLED ONE NOW.

13   YOU'VE PLED BREACH OF CONTRACT.

14             MR. REYNOLDS:  I UNDERSTAND THAT, YOUR HONOR.

15             THE COURT:  NOT FRAUD UNDER, AT LEAST, THE STANDARD

16   RULES OF PLEADING IN FEDERAL COURT.  YOU WOULD HAVE TO PLEAD

17   WITH A HEIGHTENED STANDARD, AND MORE PARTICULARITY.

18             MR. REYNOLDS:  RIGHT.  I'M NOT QUITE SURE, YOUR

19   HONOR, WITH JUST THE BASIS OF THE BOOKLET FORM, THAT I WOULD BE

20   SUCCESSFUL --

21             THE COURT:  OKAY.

22             MR. REYNOLDS:  -- IN ESTABLISHING A FRAUD *PER SE*

23   WITH REGARDS TO THE PROCUREMENT AS WELL AS WHAT WENT --

24             THE COURT:  ALL RIGHT.  WELL, THEN, I THINK THE

25   ISSUE IS SQUARELY JOINED ON THE QUESTION OF WHETHER A CLAIM



1  SUCH AS YOU HAVE PLED, AND WHAT I UNDERSTOOD YOU TO BE

2  PLEADING, WOULD BE PREEMPTED BY THE NATIONAL FLOOD INSURANCE

3  PROGRAM, AND THE CASES HAVE CHANGED OVER THE YEARS, ACTUALLY IN

4  FAIRLY SHORT ORDER OVER A PERIOD OF JUST ONE YEAR.  IN THE

5  CENTRAL DISTRICT JUDGE MATZ REVERSED HIMSELF, SO TO SPEAK, OR

6  AT LEAST REVERSED HIS POSITION FROM THE *COHEN* CASE TO THE

7  *SCHERZ* CASE.

8          *DAVIS*, INTERESTINGLY ENOUGH, CAME IN BETWEEN THOSE

9  TWO CASES, AS I RECALL.  WE ALSO HAVE THE *MESSA* CASE, WHICH IS

10 OUT OF THE DISTRICT OF NEW JERSEY, WHICH SEEMS TO BE IN ACCORD

11 WITH *SCHERZ*, AND TO FOLLOW A SIMILAR ANALYSIS.  THESE CASES ARE

12 NOT BINDING ON THE COURT, AND THE COURT REVIEWS THEM FOR THE

13 PERSUASIVENESS OR LACK THEREOF OF THE REASONING OF THOSE

14 OPINIONS.

15         I WOULD LIKE TO KNOW WHETHER THERE ARE ANY NEW

16 DEVELOPMENTS SINCE THE TIME THAT YOU BRIEFED THE MATTER.  I

17 DOUBT THAT THERE ARE, BUT YOU NEVER KNOW.  ANYTHING THAT YOU'VE

18 HEARD OF LATE, MR. REYNOLDS, OR MR. NIELSEN?

19         MR. REYNOLDS:  NOT THAT I'M AWARE OF, YOUR HONOR,

20 ALTHOUGH I MUST ALLOW THE KNOWLEDGEABLE MR. NIELSEN WITH

21 REGARDS TO THAT MATTER, SINCE HE IS PRIVY TO THE GOINGS-ON OF

22 THESE PARTICULAR MATTERS.

23         THE COURT:  WELL, I'LL JUST ASK HIM, TO THE EXTENT

24 HE'S EITHER BEEN INVOLVED IN OR OTHERWISE, WHETHER HE HAS ANY

25 NEW AUTHORITY OR NEW DEVELOPMENTS OR CHANGES SINCE THE TIME THE

1    BRIEF WAS FILED.

2         MR. NIELSEN:  THE SUBJECT OF EXPRESS PREEMPTION HAS

3    CHANGED.  IT IS NOT IN ANY SENSE NECESSARY TO THE COURT'S

4    ANALYSIS TODAY TO TOUCH UPON EXPRESS PREEMPTION, BUT I WOULD

5    BE -- I WANT -- I'M HOPING THAT THE COURT WOULD NOT HAVE A

6    RULING TODAY THAT I HAVE CONCEDED TODAY THAT THERE IS NOT AN

7    EXPRESS PREEMPTION, AND I NEED TO EXPLAIN WHY.

8         THE COURT:  ALL RIGHT, WE CAN COME BACK TO THAT,

9    THEN, AND YOU CAN MAKE A RECORD ON THAT POINT.

10         ALL RIGHT, THEN, LET ME JUST ASK MR. REYNOLDS, IS

11    THERE ANYTHING THAT YOU WOULD LIKE TO PARTICULARLY EMPHASIZE IN

12    YOUR PAPERS OR OTHERWISE BEFORE THEN I HEAR FROM MR. NIELSEN

13    AGAIN?

14         MR. REYNOLDS:  YES, YOUR HONOR.  WITH REGARDS TO THE

15    TWO CASES, THE *FLICK* AND THE *SCHERZ* CASE, AS FAR AS *FLICK* WAS

16    CONCERNED, I WAS OF THE OPINION THAT IT WAS NOT A PREEMPTION

17    CASE; THAT, IN FACT, AT THE BEGINNING OF THE CASE IT INDICATES

18    THAT THE PARTIES HAVE STIPULATED THAT THERE WAS -- THAT IT WAS

19    PREEMPTED.

20         THE COURT:  RIGHT.

21         MR. REYNOLDS:  AND THEREFORE, THE LANGUAGE OR THE

22    LAW THAT WAS SET FORTH IN THAT WAS SOLELY WITH REGARDS TO THE

23    INTERPRETATION OF THE PROOF OF LOSS AND ALLOWING THAT COURT TO

24    INTERPRET THAT AND HAVE A STRICT INTERPRETATION OF THE

25    LANGUAGE, AND I BELIEVE, THEREFORE, IT WAS SOLELY TO THAT ISSUE

1    AND NOT TO ANY ISSUE WITH REGARDS TO PREEMPTION, AND THEREFORE,

2    I DO NOT BELIEVE THAT THE *FLICK* CASE WOULD BE ON LINE, OR -- IN

3    LINE WITH WHAT WE'RE TALKING ABOUT AS FAR AS THIS PREEMPTION

4    CASE.

5         THE COURT:  RIGHT, IT'S AN APPROPRIATIONS CLAUSE

6    CASE.  OKAY.

7         MR. REYNOLDS:  WITH REGARDS TO *SCHERZ*, YOUR HONOR,

8    IT IS A CASE IN WHICH THE COURT WAS CLEAR TO SAY THAT THIS WAS

9    TO BE A VERY NARROW CASE.  EVEN IN THE REPLY BRIEF IT

10   INDICATED -- THE DEFENDANT INDICATES THAT WE NEED TO LOOK AT

11   EACH CASE AT BAR --

12        THE COURT:  CORRECT.

13        MR. REYNOLDS:  -- IN PARTICULAR WITH REGARD TO ITS

14   FACTS, AND IN AN EFFORT TO NOT USE A BROAD BRUSH WITH THE LAW

15   AND SAY THAT IT APPLIES IN EVERY PARTICULAR CASE THAT MAY HAVE

16   SIMILAR CIRCUMSTANCES.

17        AND I JUST WANTED TO CALL TO THE COURT'S ATTENTION

18   THAT IT WAS A CASE IN WHICH THE COURT, EVEN THOUGH IT WAS --

19   AND DID DISCUSS *COHEN*, IN FACT, IT WAS THE SAME JUDGE, BUT DID

20   DISCUSS *COHEN* ON MANY TERMS, AND SAID THAT *COHEN* WAS STILL

21   PREVAILING AS TO THOSE CAUSES, BUT IT DID COME AND TALK ABOUT,

22   AGAIN, THAT IT WAS TO BE A NARROWLY INTERPRETED DECISION, AND

23   THAT IT WAS NECESSARY TO FIND EACH CASE ON ITS OWN MERITS.

24        THE COURT:  OKAY.  THANK YOU VERY MUCH.

25        ALL RIGHT, MR. NIELSEN.  BY THE WAY, I MIGHT ASK

1    MR. NIELSEN WHETHER HE HAS ANY FURTHER INFORMATION ON ANY

2    ACTION THAT FEMA MAY HAVE TAKEN TO REWRITE ITS REGULATIONS OR

3    OTHERWISE.  THEY HAVE BEEN PROPOSING TO DO SO, IT SEEMS, FOR

4    SOME TIME NOW.

5              MR. NIELSEN:  ¯CORRECT.  YOUR HONOR, I'LL BEGIN

6    THERE, AND THEN I'LL GET TO THE ORAL ARGUMENT I'D LIKE TO

7    PRESENT TO THE COURT, WHICH WOULDN'T TAKE ME MORE THAN TEN

8    MINUTES.  WHAT I LIKE TO DO WHEN I TALK IN JUST A MOMENT ABOUT

9    PREEMPTION OF THE NFIP IS GET THE BASICS IN.  YOU'VE HAD THE

10   CASES THAT OFTEN COME IN AT THE MIDDLE.  I WANT TO MAKE SURE I

11   HAVE PRESENTED TO YOU HOW -- WHAT THE FOUNDATION OF IT ALL IS.

12             THE COURT:  DON'T YOU THINK YOU'VE DONE THAT IN YOUR

13   PAPERS?

14             MR. NIELSEN:  I NEED TO MAKE SURE.  WE'VE HAD SO

15   MUCH EXPENSE AND SO MUCH TIME SPENT WITH SO MANY FEDERAL

16   JUDGES, FROM MY JUDGE ALSUP EXPERIENCE TO A JUDGE IN NEW JERSEY

17   TWO WEEKS AGO WHO SAID, "MR. NIELSEN, THIS IS NOT ROCKET

18   SCIENCE," BUT WE'VE HAD A LOT OF PROBLEMS WITH JUDGES

19   DISAGREEING WITH EACH OTHER, AND JUDGE MATZ DISAGREEING WITH

20   HIMSELF, AND SO THERE HAVE BEEN PROBLEMS.

21             THE COURT:  WELL, OKAY.  WHY DON'T YOU RESPOND TO

22   THAT ONE QUESTION.  THEN I'M GOING ASK YOU ABOUT THAT OTHER

23   DEVELOPMENT THAT YOU MADE REFERENCE TO CONCERNING EXPRESS

24   PREEMPTION, AND THEN GIVE YOU A LIMITED AMOUNT OF TIME,

25   PARTICULARLY AS I SAY, BECAUSE YOU'VE COME A LONG WAY.

1    MR. NIELSEN:  THANK YOU.

2    THE COURT:  SO I'LL GIVE YOU SOME SHORT PERIOD OF

3    TIME TO MAKE SURE THAT YOU'VE LEFT NO STONE UNTURNED AND YOU'VE

4    SATISFIED YOURSELF THAT I ACTUALLY UNDERSTAND YOUR ARGUMENT,

5    WHICH I THINK I DO, BUT --

6    MR. NIELSEN:  THANK YOU, JUDGE.

7    THE COURT:  ALL RIGHT.

8    MR. NIELSEN:  YOUR PARTICULAR QUESTION FIRST THAT

9    YOU WANT ANSWERED FIRST IS --

10    THE COURT:  WHAT'S FEMA DONE OF LATE, SINCE THEY

11    APPARENTLY HAVE EXPRESSED A VIEW IN AN AMICUS BRIEF IN, I THINK

12    IT WAS *VAN HOLT* --

13    MR. NIELSEN:  *VAN HOLT*.

14    THE COURT:  -- THAT THERE WAS NOT ROOM FOR A STATE

15    ACTION IN THESE MATTERS.

16    MR. NIELSEN:  SUBSEQUENT TO *VAN HOLT* YOU HAD JUDGE

17    MATZ'S DECISION IN *COHEN*, WHICH WAS FOLLOWED BY *STANTON* AND

18    *DAVIS*.  AFTER *DAVIS*, FEMA WENT IN, AND THIS IS QUOTED IN

19    *SCHERZ*, THAT THEY CHANGED EVERY PERSON'S POLICY IN THE COUNTRY

20    TO ADD AN EXPRESS PREEMPTION RULE INTO THE POLICY.

21    AND THE IMPORTANT THING TO NOTE ABOUT THAT, WHEN IT

22    BECAME A FINAL RULE AS OF DECEMBER 31ST, 2000, SO IT IS NOW IN

23    PLACE, IT IS THE LAW NOW, THAT THERE IS AN EXPRESS PREEMPTION

24    PROVISION IN THE POLICY.  THE ARTICLE 11 -- IT MAY HAVE BEEN

25    10 -- IT'S THE LAST SECTION OF THE POLICY.

1    THE COURT:  LET ME ASK YOU, DO I HAVE THAT LANGUAGE

2   BEFORE ME IN ANY ATTACHMENT?

3    MR. NIELSEN:  IT IS QUOTED IN JUDGE MATZ'S DECISION

4   IN *SCHERZ*.

5    THE COURT:  DO YOU HAVE THAT DECISION IN FRONT OF

6   YOU, OR COMMITTED TO MEMORY IN SOME WAY?  I HAVE THE OPINION

7   RIGHT NOW, AND I COULD FIND THAT, IF YOU TELL ME WHERE IT IS.

8    MR. NIELSEN:  I DO HAVE IT.

9    THE COURT:  OKAY, THANK YOU.

10    MR. NIELSEN:  OKAY, JUDGE SCHERZ -- I MEAN, JUDGE

11   MATZ'S DECISION IN *SCHERZ* IS AT 112 F. SUPP. 2D. 1000.

12    THE COURT:  AT WHAT PAGE?

13    MR. NIELSEN:  AND HE QUOTES FROM THE PROPOSED RULES

14   AT PAGE 1004, BEGINNING AT 1004, GOING ON TO 1005.

15    THE COURT:  ALL RIGHT, JUST ONE MINUTE.  LET'S SEE.

16    MR. NIELSEN:  AND I CAN HAND UP THIS PAGE OF THE

17   DECISION, SO THAT --

18    THE COURT:  THAT'S OKAY, I CAN FIND IT.  WHICH --

19   I'M SORRY -- IS IT PARAGRAPH 9, THEN?

20    MR. NIELSEN:  YES, MA'AM.

21    THE COURT:  OKAY, JUST ONE MINUTE.  ALL RIGHT, AT

22   THE TIME OF JUDGE SCHERZ'S -- I'M SORRY, NOW YOU'VE GOT ME

23   DOING IT.

24    MR. NIELSEN:  SORRY.

25    THE COURT:  AT THE TIME OF JUDGE MATZ'S OPINION IN



1   *SCHERZ*, THE COURT HAD SAID THAT FEMA HAD RECENTLY PROPOSED

2   ADDING THE PROVISION.  ARE YOU SAYING THEY HAVE NOW DONE SO?

3          MR. NIELSEN:  THOSE ARE NOW FINAL RULES, AND WHAT

4   JUDGE MATZ SAID IN *SCHERZ*, ON THE NEXT PAGE, ON PAGE 1005, IS

5   THIS, QUOTE,

6             "THIS PROPOSED CHANGE, IF EVENTUALLY ADOPTED AS

7             AN AGENCY REGULATION AND INCORPORATED INTO FUTURE

8             SFIP'S, WILL EXPRESSLY PREEMPT STATE LAW CLAIMS SUCH

9             AS *SCHERZ*, IMPLIED COVENANT CLAIMS, THEREBY

10            EFFECTIVELY OVERRULING *COHEN*, *STANTON* AND *DAVIS*."

11         THE COURT:  I ACTUALLY HAVE THAT HIGHLIGHTED IN MY

12  COPY, BUT THE POINT IS THAT AT THE TIME YOU SUBMITTED THIS TO

13  ME, I DIDN'T RECALL YOU ARGUING THAT IT HAD BEEN ACTUALLY

14  CHANGED.

15         MR. NIELSEN:  WELL, AT THE TIME MY MEMO WAS

16  SUBMITTED IN OCTOBER, IT WAS STILL A PROPOSED RULE.

17         THE COURT:  I SEE.

18         MR. NIELSEN:  BUT WE DID PUT AS A FOOTNOTE, THIS IS

19  ABOUT TO CHANGE, PLEASE SEE....

20         THE COURT:  THAT PROBABLY COULD HAVE BEEN SUBMITTED

21  AS A SUPPLEMENTAL BRIEFING, GIVEN THE CHANGE, GIVEN THE

22  SIGNIFICANCE OF IT, OR AT LEAST THAT YOU MIGHT HAVE ASKED LEAVE

23  TO SUBMIT IT, BECAUSE CLEARLY IT WAS IMPORTANT TO JUDGE SCHERZ

24  (SIC).  HE WAS OF THE OPINION THAT THAT BASICALLY RESOLVED THE

25  ISSUE IF IT WERE DONE, BUT IT HAD NOT YET BEEN DONE.

1    NOW, YOU TELL ME THAT THIS ACTION WAS TAKEN WHEN?

2    MR. NIELSEN:  WELL, IT WAS TAKEN AT THE TIME OF --

3    THE COURT:  WELL, THEY PROPOSED IT.

4    MR. NIELSEN:  THEY PROPOSED IT, AND IT WAS PUT IN

5    THE FEDERAL REGISTER.  THEY HAVE THE 60-DAY COMMENT PERIOD.  IT

6    BECAME EFFECTIVE AS A FINAL RULE AS OF DECEMBER 31ST, 2000.

7    THE COURT:  OKAY, WELL, LET JUST MAKE A NOTE OF

8    THAT.  YOU KNOW, I HAVE NO EVIDENCE BEFORE ME OF THAT EXCEPT

9    YOUR REPRESENTATION, WHICH I'M WILLING TO TAKE AT THE MOMENT,

10   BUT I THINK FORMALLY IT WOULD BE PREFERABLE TO HAVE THAT BEFORE

11   THE COURT AS ACTUAL EVIDENCE.  LET ME JUST LOOK AT IT AGAIN TO

12   SEE WHAT THE PHRASING IS.

13   THE LANGUAGE THAT YOU SAY HAS NOW BEEN INCLUDED IN

14   THE POLICY, SO THAT WHEN SOMEONE ACTUALLY PURCHASES SUCH A

15   POLICY, THEY'VE OBVIOUSLY AGREED THE POLICY IS ONLY COVERED BY

16   FEDERAL LAW?

17   MR. NIELSEN:  I DON'T KNOW IT'S SO MUCH AS THEY

18   AGREED TO IT AS THE AGENCY CHARGED BY CONGRESS AT 4019 TO MAKE

19   THE RULES HAS MANDATED THIS.

20   THE COURT:  WELL, IT'S INCLUDED AS A TERM IN THE

21   POLICY, ISN'T IT?

22   MR. NIELSEN:  CORRECT, AND SO YES, IN ADDITION, THEY

23   HAVE AGREED TO IT.

24   THE COURT:  HOWEVER IT GOT IN THE POLICY, IT WOULD

25   SEEM TO ME THAT THE ARGUMENT IS THAT THAT'S WHAT THE AGREEMENT

1      IS.   IT READS,

2                  "THIS POLICY AND ALL DISPUTES ARISING FROM THE

3                  HANDLING OF ANY CLAIM UNDER THE POLICY ARE GOVERNED

4                  EXCLUSIVELY BY THE FLOOD INSURANCE REGULATIONS

5                  ISSUED BY FEMA, THE NATIONAL FLOOD INSURANCE ACT OF

6                  1968, AS AMENDED, AND FEDERAL COMMON LAW."

7                  I WONDER IF THAT WILL CREATE ITS OWN BODY OF ISSUES.

8      IN ANY EVENT, ALL RIGHT.   SO WE NOW HAVE THAT, WHICH IS

9      CERTAINLY --

10                 MR. NIELSEN:   TWO COMPLICATING FACTORS ABOUT IT,

11     THOUGH.

12                 THE COURT:   -- OF INTEREST.   YES?

13                 MR. NIELSEN:   THAT LANGUAGE, WHERE THEY ADDED "AND

14     ALL DISPUTES ARISING FROM THE HANDLING OF ANY CLAIM UNDER THE

15     POLICY," IS NOT IN MS. AXELROD'S POLICY.

16                 THE COURT:   I'M AWARE OF THAT.

17                 MR. NIELSEN:   OKAY, AND SO I DON'T WANT TO BE

18     MISLEADING THE COURT, THOUGH HERE'S WHERE WE ARE.   IT'S NOT IN

19     MS. AXELROD'S POLICY, BUT AT THE TIME SHE PURCHASED HER POLICY,

20     THE LAW WAS PERFECTLY CLEAR THAT THERE WAS PREEMPTION.   NO

21     COURT HAD HELD THAT THERE WASN'T BEFORE JUDGE MATZ'S DECISION

22     IN *COHEN*.

23                 SO YOU HAD A FEDERAL AGENCY THAT HAD THE "WHAT LAW

24     GOVERNS" SECTION, THAT IT PUT IN 1982, WHICH IT VIEWED AS, HEY,

25     FEDERAL LAW GOVERNS, THERE'S NO ROOM FOR STATE LAW, BECAUSE IF

1    YOU LOOK AT THAT "WHAT LAW GOVERNS" SECTION FROM THE LATE 70'S,

2    IT DID SAY STATE LAW COULD GOVERN.  THEN THEY SAY IN '82,

3    FEDERAL LAW GOVERNS, PERIOD.  WE WENT FROM '83 TO 1999 WITHOUT

4    A PROBLEM, AND THEN IF YOU READ THE EXPLANATION JUDGE MATZ

5    QUOTED, THEY'RE SAYING, WE ARE DOING THIS TO CLARIFY AND TO

6    EMPHASIZE OUR RULE.  THEY'RE NOT MAKING A NEW RULE.

7          SO THEIR POSITION IS, AS EVIDENCED BY THEIR *VAN HOLT*

8    BRIEF TWO YEARS EARLIER, IS, WE'VE ALWAYS VIEWED THIS AS

9    PREEMPTED, AND SO WE DON'T HAVE A NEW RULE.

10          AND SO YOUR HONOR CAN DO ONE OF TWO THINGS:  YOU

11    COULD SAY, WELL, TODAY I'M JUST GOING TO GO ON CONFLICT

12    PREEMPTION BECAUSE EXPRESS PREEMPTION, THAT'S REALLY GOING TO

13    TAKE OVER AS THE NEW POLICIES ROLL IN.  SO THAT IS A VIABLE

14    OPTION.

15          YOUR OTHER OPTION IS TO SAY, WELL, THE ONLY REASON

16    WE GOT INTO ALL OF THIS WAS BECAUSE OF JUDGE MATZ DOING THE

17    *COHEN* RULING, BECAUSE THAT CASE WAS NOT PROPERLY PRESENTED TO

18    HIM.  LET'S GO AHEAD AND GET BACK TO WHERE FEMA SAID WE WERE

19    SUPPOSED TO BE ALL ALONG.  WE CAN SAVE FEMA A FORTUNE IN

20    LITIGATION COSTS, WE CAN SAVE A LOT OF FEDERAL JUDGES HAVING TO

21    GRAPPLE WITH ALL OF THIS, INSTEAD OF, FOR THE TWO-YEAR WINDOW,

22    OF LAWYERS TRYING TO ARGUE TO JUDGES WHETHER WE HAVE THIS OR

23    NOT.

24          THE COURT:  I WANT TO TAKE A LOOK AT ONE THING FOR A

25    MOMENT.  YOU DON'T HAVE AN EXPRESSION IN THE STATUTE ITSELF,

1   THOUGH.

2           MR. NIELSEN:  WE DO NOT.

3           THE COURT:  RIGHT.

4           MR. NIELSEN:  HOWEVER, I WANT TO FOCUS THE COURT ON

5   THREE STATUTES, AND LET ME GO AHEAD AND, IF I MAY, BEGIN MY

6   SHORT ORAL ARGUMENT BEFORE THE COURT.

7           THE COURT:  OKAY.  I HOPE TO CONCLUDE THESE

8   PROCEEDINGS BY 10:00 O'CLOCK, SO....

9           MR. NIELSEN:  I'M GOING TO TAKE LESS -- IF I TAKE

10  TEN MINUTES, CUT ME OFF.

11          THE COURT:  OKAY.

12          MR. NIELSEN:  OKAY, THERE'S THREE STATUTES I WANT TO

13  FOCUS THE COURT IN ON.  THE FIRST IS 4017(D)(1), WHERE CONGRESS

14  IS APPROPRIATING FUNDS FOR THE CLAIMS AND THE CLAIMS

15  ADJUSTMENT.  THEY PAY FOR ALL OF THE SERVICES FOR PEOPLE TO GET

16  THESE CLAIMS HANDLING, INCLUDING MY LEGAL BILL.  I'M GOING TO

17  BE PAID FOR BY BANKERS, AND THEY GET THEIR MONEY BACK FROM

18  FEMA.

19          THEN IN 4019, CONGRESS SAID TO FEMA, YOU MAKE THE

20  RULES FOR THE CLAIMS ADJUSTMENT FOR THINGS LIKE FLOOD PLAIN

21  MANAGEMENT REGULATIONS, LOCAL ZONING CODES, STATUTES, SAY, WORK

22  WITH STATE OFFICIALS.  AS TO THIS, THEY SAY, FEMA, YOU MAKE THE

23  RULES.

24          THEN YOU GET TO 4072, WHICH IS A JURISDICTIONAL

25  STATUTE.  IT SAYS FEDERAL JUDGES MAKE THE ULTIMATE DECISIONS.

1    SO CONGRESS SAID, FEMA, YOU'RE THE REGULATOR, AND FEDERAL

2    JUDGES, YOU'RE THE ADJUDICATOR.

3            SO IN THE CURRENT POSTURE OF THIS CASE, I HAVE TO

4    LISTEN TO FEMA.  I HAVE NO DISCRETION TO WAIVE A RULE OR DO

5    SOMETHING THAT'S NOT IN THEIR VIEW.

6            YOU, ACCORDING TO CONGRESS, ARE IN A FAR DIFFERENT

7    SITUATION.  YOU LOOK AT THAT CHALLENGED DISPUTE AND YOU GET TO

8    DECIDE, FEMA, YOU'RE WRONG, AS THE NINTH CIRCUIT DID IN *MCHUGH*

9    *V. USA*.  SO YOU CAN SAY, I ORDER A DIRECT CHARGE ON THE

10   NATIONAL TREASURY.  CONGRESS HAS GIVEN YOU THAT RIGHT.

11           THERE ARE TWO SEPARATE PREMISES OF MY MOTION TO

12   DISMISS.  ONE IS THE APPROPRIATIONS CLAUSE, ONE IS THE

13   SUPREMACY CLAUSE.  THEY'RE DISTINCT ARGUMENTS.

14           UNDER THE APPROPRIATIONS CLAUSE, I'M SAYING THAT IT

15   IS -- THAT YOU CANNOT HAVE EVERY DIFFERENT STATE AND EVERY

16   FEDERAL JUDGE IN EACH STATE ADDING NEW STANDARDS OF CARE, OR "I

17   THINK THIS OUGHT TO HAPPEN."  WITH ALL RESPECT TO JUDGE ALSUP,

18   HE WAS MAD BECAUSE MY CLIENT IN THAT CASE DID NOT INFORM THE

19   PERSON OF THE PROOF OF LOSS.  SO HE ADDED A NEW STANDARD OF

20   CARE THAT WE AFFIRMATIVELY TELL EVERY PERSON MAKING A CLAIM OF

21   THE PROOF OF LOSS REQUIREMENT.  WELL, THAT VIOLATES *FEDERAL*

22   *CROP INSURANCE CORPORATION V. MERRILL*, IT VIOLATES *GEIER*, WHICH

23   SAYS THAT YOU ARE TO GIVE DEFERENCE TO FEDERAL AGENCIES.  IT'S

24   INCONSISTENT WITH THE CALIFORNIA LAW THAT SAYS INSURANCE

25   COMPANIES ARE NOT THE FIDUCIARY OF AN INSURED, AS WAS HELD IN

1    *PECAROVICH V. ALLSTATE*, A FEDERAL COURT DECISION.  THERE'S NO

2    FOUNDATION FOR THAT.  AND THEN THE NINTH CIRCUIT IN *FLICK* SAYS

3    THERE ARE NOT TO BE ANY SPECIAL RULES THAT ARE DIFFERENT FOR

4    THE WRITE-YOUR-OWN CARRIERS AS OPPOSED TO FEMA, BECAUSE FEMA IS

5    DOING A DELICATE BALANCE BETWEEN PAYING CLAIMS AND THE

6    LONG-TERM SUSTAINABILITY OF THE PROGRAM.

7            THE NFIP IS WONDERFUL FOR CALIFORNIA, TEXAS,

8    LOUISIANA, FLORIDA AND NORTH CAROLINA, BUT THERE ARE LOT OF

9    STATES THAT DERIVE VIRTUALLY NO BENEFIT FROM IT, AND WE NEED

10   ALL OF THE CONGRESS TO AGREED TO KEEP FUNDING THIS.  IF CERTAIN

11   STATES START THINKING THEY CAN ADD NEW RULES TO THIS THING TO

12   BENEFIT JUST THEIR STATE CITIZENS, WE HAVE A PROBLEM.

13           AS TO THE SUPREMACY CLAUSE, JUDGE MATZ HAD IT RIGHT.

14   YOU CAN'T -- IT CAN'T BE DONE.  I CAN'T FOLLOW TWO RULES AT THE

15   SAME TIME.  THERE'S NO WAY TO DO IT.  AS THE NINTH CIRCUIT IN

16   *FLICK* SAID, YOU CAN'T APPLY CALIFORNIA'S RULES OF NOTICE, FOR

17   EXAMPLE, SUBSTANTIAL COMPLIANCE, BECAUSE OF THE APPROPRIATIONS

18   CLAUSE.

19           SO I HAVE THE FEDERAL LAW TELLING MY CLIENTS, YOU

20   ABSOLUTELY SHALL FOLLOW THESE HARSH RULES, AND YOU COULD GO TO

21   THE FEDERAL PENITENTIARY IF YOU DON'T, AS PER *OPM V. RICHMOND*,

22   AND I'VE GOT PEOPLE WANTING TO SUE ME FOR NOT BEING REASONABLE

23   AND FAIR AND THAT KIND OF STUFF.  WELL, FEMA TELLS ME I CAN'T.

24           NOW, JUST AS A PRACTICALITY, FEMA ABSOLUTELY NEEDS

25   MY CLIENT'S WILLINGNESS TO PARTICIPATE.  THEY NEED US LENDING

OUR NAMES TO THIS PROGRAM.  THEY NEED OUR EXPERTISE.  THEY ALSO

NEED ME BEING WILLING TO ENFORCE THEIR HARSH, VERY HARSH,

RULES, WHICH MY CLIENT'S GOT TO PUT THEIR NAME ON, DOING SOME

VERY HARSH THINGS.

NOW, AS A RESULT OF THE DECISION IN *DAVIS*, MANY OF

THE COMPANIES ARE SAYING TO FEMA, YOU'RE GOING TO START PAYING

US MORE IF WE'RE GOING TO HAVE THESE KINDS OF RISKS TO OUR

NAME, AND SO THE COST OF WHAT JUDGE ALSUP DID IN *DAVIS* IS GOING

TO BE UNTOLD MILLIONS OF DOLLARS IN RUN-UP OF PROGRAM COSTS TO

THE PROGRAM BECAUSE WE HAD, WITH ALL RESPECT, A FEDERAL JUDGE

SAYING, FEMA, I'M NOT GOING TO RESPECT YOUR VIEW, I'M GOING TO

DO WHAT I WANT TO DO, AND IF EVERY FEDERAL JUDGE IN THE COUNTRY

DID THAT, WE WOULD HAVE WHAT THE CALIFORNIA APPELLATE COURT IN

*MCCORMACK V. TRAVELERS* JUST SAID, A BALKANIZATION OF THIS CHILD

OF CONGRESS.

AND SO WE ASK THAT THIS CASE BE HANDLED ON THIS

BASIS:  MISS AXELROD HAS A CLAIM FOR U.S. TREASURY BENEFITS.

FEMA, THE AGENCY CHARGED BY CONGRESS, HAS SAID FOR HER AND FOR

HER NEIGHBORS, YOU CAN'T HAVE THE MONEY.  I AM BOUND TO RESPECT

THAT VIEW UNTIL YOU SAY OTHERWISE.  I WANT TO GET ALL THE STATE

LAW STUFF OUT OF HERE, THEN LET US DO SOME VERY SHORT QUICK

DEPOSITIONS OR GO TO MEDIATION, WHATEVER THE COURT WOULD WANT,

BUT IN THE FINAL ANALYSIS, YOU GET TO SAY, MS. AXELROD, YOU GET

THE U.S. TREASURY BENEFITS, OR YOU DON'T, AND MY CLIENT HAS NO

FINANCIAL INCENTIVE TO HAVE HER NOT GET THOSE BENEFITS.  UNDER

```
 1   FEMA'S SYSTEM, IF SHE GETS THE BENEFITS, I GET A 3.3 PERCENT
 2   COMMISSION UPON WHAT SHE GETS.  SO WE GET TO COME INTO YOUR
 3   COURTROOM, PRESENT EVERYTHING HONESTLY AND FAIRLY AND DOING THE
 4   RIGHT THING BECAUSE WE'RE DEALING WITH OTHER PEOPLE'S MONEY,
 5   AND PROPERLY FIGURE OUT WHAT'S THE RIGHT THING TO HAPPEN HERE.
 6   THEY SHOULDN'T HAVE THIS CLUB OVER MY HEAD OF THE STATE LAW
 7   PUNITIVE THINGS, WHEN I MAKE MORE MONEY IF I GIVE HER THE
 8   MONEY.  IT DOESN'T WORK THAT WAY.
 9           THE COURT:  SO A CERTAIN IRONY IN THE SYSTEM.  IF
10   YOU LOSE THE LAWSUIT, YOUR CLIENT RECOVERS A COMMISSION.
11           MR. NIELSEN:  I'M THE ONLY LAWYER IN THE COUNTRY, IF
12   I LOSE, MY CLIENT GOES, "YES", BUT THERE'S A REASON FOR THAT.
13   CONGRESS WANTS MILLIONS OF DOLLARS -- SAY, WHEN A HURRICANE
14   COMES INTO SOUTH FLORIDA, THEY WANT MY CLIENTS PAYING THOSE
15   CLAIMS, WITHIN THE PROGRAM DICTATES, AS FAST AS POSSIBLE.  THEY
16   WANT HUGE AMOUNTS POURED INTO THESE COMMUNITIES TO GET THEM
17   RESTARTED.  IF MY CLIENTS ARE DRAGGING THEIR HEELS, THEN YOU'RE
18   GOING TO HAVE MOM-AND-POP BUSINESSES FROM ONE END OF THE COAST
19   TO THE OTHER DROPPING DEAD.  SO THERE ARE MANY PROGRAMMATIC
20   REASONS IT'S DONE THIS WAY, AND IT WORKS VERY WELL.
21           THE COURT:  ALL RIGHT, THANK YOU.
22           MR. NIELSEN:  THANK YOU, JUDGE.
23           THE COURT:  ALL RIGHT, MR. REYNOLDS, ANY PARTING
24   SHOT, HERE?
25           MR. REYNOLDS:  YOUR HONOR, I WILL BE VERY BRIEF.  AS
```

1    THIS COURT LOOKS AT THE DOCUMENTS BEFORE THEM, I.E., THE

2    COMPLAINT THAT WAS FILED AND THE POLICY THAT WAS ATTACHED, ALL

3    WE HAVE HERE IS AN INSURED WHO HAS A CONTRACTUAL RELATION WITH

4    NO ONE OTHER THAN THE PRIVATE INSURER BANKERS.  AND NO ONE

5    OTHER THAN A PRIVATE INSURER OR A CLAIM MADE UNDER A POLICY

6    WOULD BE A DIRECT CHARGE ON THE PUBLIC TREASURY.  THIS IS PART

7    OF THE *FLICK* DECISION.

8            THIS IS BASICALLY AN INSURANCE POLICY INTERPRETATION

9    CASE, AND IT JUST HAPPENS TO INVOLVE AN INSURANCE COMPANY THAT

10   IS SUBSIDIZED BY A GOVERNMENTAL PROGRAM.  BUT THE SITUATION

11   HERE IS THAT, AS INDICATED, THE GOVERNMENT DECIDED THAT THEY

12   WANT TO CLOSE THE DOOR TO ANY MISINTERPRETATION, THAT'S WITH

13   REGARDS TO THE NEW LANGUAGE THAT'S GOING TO BE IN THE POLICY.

14   THEY FELT ALL ALONG THAT IT WAS CLEAR ON ITS FACE.  HOWEVER,

15   THE COURTS DECIDED OTHERWISE.

16           AND THE COURTS IN CALIFORNIA HAVE SAID THAT THE

17   INSURED HAS THIS RIGHT, THAT IT IS NOT CLEARLY PREEMPTED, AND

18   THEREFORE, THE STATE LAW WILL APPLY WITH REGARDS TO THOSE

19   SPECIFIC ISSUES, WITH REGARDS TO THE EXTRA-CONTRACTUAL ASPECTS

20   OF THE CLAIM BROUGHT BY THE PLAINTIFF.

21           AGAIN, YOUR HONOR, THIS IS ONE, NOW, IN HINDSIGHT, I

22   GUESS THE GOVERNMENT HAS SEEN THE LIGHT, SO TO SPEAK, AND

23   REALIZED THAT MAYBE THIS IS NOT SO -- SINCE THERE IS NO EXPRESS

24   LANGUAGE, WE BETTER MAKE SURE THAT IT IS IN THE FUTURE, BUT

25   THIS IS NOT THE CASE THAT YOU HAVE BEFORE YOU.  THIS IS NOT

1   THAT POLICY.

2          AND WITH REGARDS TO THE PARTIES CLAIMING PREEMPTION,

3   THEY HAVE THE BURDEN OF ESTABLISHING A CLEAR AND MANIFEST

4   INTENT BY CONGRESS TO PREEMPT, AND I DON'T BELIEVE THAT THE

5   CASES AND THE POSITION THAT HAS BEEN PRESENTED TODAY IS A CLEAR

6   INTENT OF PREEMPTION.

7          THE COURT:  THANK YOU.  ALL RIGHT, I WOULD DEEM THE

8   MATTER, THEN, UNDER SUBMISSION, AND I AM PREPARED TO RULE AT

9   THIS TIME.  THERE WERE MATTERS THAT I WANTED TO CLARIFY WITH

10  YOU BECAUSE THE LAW HAS BEEN CHANGING FROM DAY TO DAY.  I

11  WANTED TO MAKE SURE THAT I HAD THE MOST CURRENT VERSION OF IT,

12  AS WELL.  I'M REASONABLY SATISFIED THAT, BETWEEN THE TWO SIDES

13  OF THIS CASE, WHATEVER LAW IS OUT THERE HAS BEEN PRESENTED TO

14  THE COURT.

15         IN THIS MATTER, I HAVE CONSIDERED THE AUTHORITIES

16  THAT WERE RELIED UPON BY THE RESPECTIVE PARTIES, IN SOME

17  INSTANCES MUTUALLY RELIED UPON WITH DIFFERENT INTERPRETATIONS.

18         I AM PREPARED TO FIND, WITHOUT REACHING THE ISSUES

19  OF EXPRESS AND FIELD PREEMPTION, THAT PLAINTIFF'S SECOND CAUSE

20  OF ACTION IS PREEMPTED UNDER A THEORY OF CONFLICT PREEMPTION,

21  AND MOST PARTICULARLY, THAT ASPECT OF CONFLICT PREEMPTION WHERE

22  THE STATE LAW STANDS AS AN OBSTACLE TO THE ACCOMPLISHMENT AND

23  EXECUTION OF THE FULL PURPOSES AND OBJECTIVES OF CONGRESS.

24         I MAKE THAT FINDING FOR THE REASONS EXPRESSED IN THE

25  VERY THOUGHTFUL AND THOROUGH OPINION OF JUDGE MATZ IN *SCHERZ V.*

1   *SOUTH CAROLINA INSURANCE COMPANY*, AND TO THE EXTENT THOSE VIEWS

2   ARE ECHOED IN THE NORTHERN -- I'M SORRY, THE DISTRICT OF NEW

3   JERSEY OPINION IN *MESSA V. MOHAWK PROPERTY*.  FOR THOSE REASONS,

4   AS WELL, I WILL NOT ELABORATE ON THEM NOW.  AS I MENTIONED, I

5   AM LOSING MY VOICE AND I'M NOT SURE HOW MUCH MORE IS LEFT FOR

6   ME TO SAY IN THAT RESPECT.

7          IN ANY EVENT, SINCE THOSE TWO JUDGES HAVE, IN MY

8   VIEW, SAID IT WELL, I BELIEVE THAT *DAVIS* IS DIFFERENT, IN ANY

9   EVENT, FROM THE CASE THAT WE HAVE HERE.  THE ISSUE PRESENTED IN

10  THIS CASE I'VE CLARIFIED IS NOT THE ISSUE THAT WAS PRESENTED TO

11  JUDGE ALSUP IN *DAVIS*.  SO THAT CASE IS DISTINGUISHABLE, IN ANY

12  EVENT, AS IS, FOR EXAMPLE, THE *SPENCE* CASE, WHICH INVOLVED A

13  FRAUD IN THE PROCUREMENT CLAIM, WHICH PLAINTIFF AGREES WOULD BE

14  DIFFICULT TO ALLEGE UNDER THE CIRCUMSTANCES OF THIS PARTICULAR

15  CASE, THOUGH I'VE CLARIFIED THAT WITH PLAINTIFF.

16         FOR THAT REASON, THE MOTION IS GRANTED AS TO THE

17  SECOND CAUSE OF ACTION.  THE SECOND CAUSE OF ACTION IS

18  DISMISSED WITHOUT LEAVE TO AMEND.

19         THE PRAYER FOR PUNITIVE DAMAGES AND ATTORNEYS' FEES

20  IS STRICKEN, AS THOSE DAMAGES ARE NOT AVAILABLE UNDER THE FIRST

21  CAUSE OF ACTION, AND THE MOTION TO QUASH JURY DEMAND IS

22  DENIED -- I'M SORRY -- IS GRANTED, AND JURY TRIAL IS DENIED.

23         I DON'T BELIEVE THERE ARE ANY OTHER ISSUES BEFORE

24  THE COURT AT THIS TIME.  I APPRECIATE THE WORK THAT BOTH

25  COUNSEL DID IN PUTTING THIS MATTER BEFORE THE COURT.  IT WAS

1    VERY THOROUGH.  THANK YOU VERY MUCH.

2            MR. GLEASON:  YOUR HONOR, OUR CMC HAS BEEN CONTINUED

3    FROM JANUARY 13TH, I WANT TO SAY, OR SOME TIME, AND YOU ISSUED

4    AN ORDER JUST SAYING WE'D TAKE CARE OF IT.

5            THE COURT:  DID I SAY THAT?  IT'S ON TODAY, TO

6    RESET.  CAN YOU GIVE ME A DATE THAT YOU WOULD LIKE TO HAVE THE

7    NEXT CASE MANAGEMENT CONFERENCE?

8            MR. GLEASON:  LET ME GRAB MY CALENDAR, YOUR HONOR.

9            THE COURT:  OKAY.  I THINK, MR. GLEASON, YOU'LL

10   PROBABLY APPEAR ON THAT.

11           MR. NIELSEN, IT WAS VERY HARD TO CONDUCT A CASE

12   MANAGEMENT WITH ONE PERSON ON THE PHONE, AND EVERYONE ELSE

13   HERE.  THERE'S NO QUESTION THE FARBSTEIN OFFICE CAN HANDLE THE

14   CASE MANAGEMENT CONFERENCE, AND --

15           MR. NIELSEN:  THIS IS MY SAVIOR OUT HERE.

16           THE COURT:  -- AND THEY'RE VERY KNOWLEDGEABLE IN

17   INSURANCE LAW, AS I'M SURE YOU'RE WELL AWARE.

18           MR. GLEASON:  AND YOUR HONOR, THAT'S PRIMARILY WHY

19   WE'RE INVOLVED TO HANDLE THE CALIFORNIA ISSUES.  BUT WHAT DATE

20   RANGE WOULD WE BE LOOKING AT, YOUR HONOR?

21           THE COURT:  JUST ENOUGH TIME FOR YOU TO DECIDE HOW

22   YOU'RE GOING TO PROCEED NOW MUTUALLY IN LIGHT OF THIS

23   PARTICULAR RULING, AND TO PUT TOGETHER A BRIEF STATEMENT

24   BRINGING ME UP TO DATE AS TO THE TIMING OF THE TRIAL AND YOUR

25   ESTIMATE AS TO ITS LENGTH, THINGS OF THAT NATURE.  UNLESS YOU

1  KNOW THEM ALREADY.

2          MR. REYNOLDS:  WELL, NOW IT'S CHANGED, SO WE'RE

3  GOING TO NEED TO....

4          AGAIN, YOUR HONOR, THIS IS WHY WE WERE DEALING WITH

5  IT IN THIS FASHION, TO HAVE THIS MOTION JUST TO MAKE A

6  DECISION, AND THEN WE REALLY NEED TO RE-GROUP HERE AND

7  DETERMINE WHAT WE NEED TO DO AS FAR AS THE DISCOVERY ASPECT OF

8  IT.

9          THE COURT:  THAT'S FINE.

10          MR. GLEASON:  CMC IN SIX WEEKS?

11          MR. REYNOLDS:  WHY DON'T WE DO THAT.

12          MR. GLEASON:  CMC IN SIX WEEKS, WITH A BRIEF A WEEK

13  BEFORE, WITH A STATEMENT OF --

14          THE COURT:  SURE.  TODAY IS THE 26TH.  A MONTH WOULD

15  BE THE 23RD.  YOU'RE LOOKING AT THE VICINITY OF MARCH 16TH.

16  THAT DATE IS NOT FIXED IN STONE.  YOU CAN MOVE IT A WEEK HERE

17  OR THERE, WHATEVER IS APPROPRIATE.  DO YOU WANT TO CHOOSE IT

18  NOW, IN GIVING YOUR CALENDARS A LOOK?

19          MR. REYNOLDS:  WANT TO CHOOSE THAT DATE?

20          MR. GLEASON:  THAT'S FINE.

21          THE COURT:  OKAY, MARCH 16 IS THE -- JUST A

22  MOMENT -- DATE FOR THE CONTINUED CASE MANAGEMENT'S CONFERENCE

23  WITH A JOINT STATEMENT DUE FROM THE PARTIES A WEEK BEFORE,

24  WHICH IS THE 9TH.

25          MR. REYNOLDS:  AND YOUR HONOR, THE CMC WOULD BE AT

1    10:00 O'CLOCK?

2            THE COURT:  AT 10:30, ACTUALLY.  YOU CAN COME AT 10,

3    BUT NOTHING WILL HAPPEN THEN, IN ALL LIKELIHOOD.

4            MR. REYNOLDS:  RIGHT, YOUR HONOR.

5            THE COURT:  THANK YOU VERY MUCH.

6            MR. REYNOLDS:  THANK YOU, YOUR HONOR.

7            MR. GLEASON:  THANK YOU, YOUR HONOR.

8            MR. NIELSEN:  HOPE YOU FEEL BETTER.

9            THE COURT:  THANK YOU VERY MUCH.

10                                              9:58 A.M.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATE OF REPORTER

I, LEO T. MANKIEWICZ, OFFICIAL REPORTER FOR THE UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY CERTIFY THAT THE FOREGOING PROCEEDINGS IN 99-2663 MMC, AXELROD V. BANKERS INSURANCE COMPANY, WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS AS BOUND BY ME AT THE TIME OF FILING.

THE VALIDITY OF THE REPORTER'S CERTIFICATION OF SAID TRANSCRIPT MAY BE VOID UPON DISASSEMBLY AND/OR REMOVAL FROM THE COURT FILE.

LEO T. MANKIEWICZ, CSR 5297, RMR, CRR

MONDAY, MARCH 5, 2001

LEO T. MANKIEWICZ - OFFICIAL REPORTER, U.S. DISTRICT COURT - (415) 861-2336

EXHIBIT 11

DECL OF GARY R. GLEASON IN
SUPP. OF DEF.'S MTN TO DISMISS
STATE LAW CLAIMS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE CHARLES A. LEGGE, JUDGE

JOHN FONSECA,                      )
                                   )
              PLAINTIFF,           )
                                   )
  VS.                              )   NO. C 99-1910 CAL
                                   )
BANKERS INSURANCE COMPANY, ET      )   PAGES 1 - 8
AL,                                )
                                   )
              DEFENDANTS.          )
_____    )

                        SAN FRANCISCO, CALIFORNIA
                        FRIDAY, MARCH 16, 2001


                  TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

FOR PLAINTIFF:          ROSENBERG & MENDLIN
                        1901 AVENUE OF THE STARS, SUITE 1600
                        LOS ANGELES, CALIFORNIA 90067-6080

                        BY:  ROGER M. ROSEN, ESQ.


FOR DEFENDANTS:         FARBSTEIN & BLACKMAN
                        1820 GATEWAY DRIVE, SUITE 320
                        SAN MATEO, CALIFORNIA 94404

                        BY:  GARY R. GLEASON, ESQ.


FURTHER APPEARANCES ON NEXT PAGE.



REPORTED BY:  KATHERINE POPE WYATT, CSR, RPR, RMR
              OFFICIAL REPORTER, USDC

        COMPUTERIZED TRANSCRIPTION BY ECLIPSE

```
1    FURTHER APPEARANCES:

2    ALSO FOR DEFENDANTS:

3

4    NIELSEN LAW FIRM

5    2121 AIRLINE DRIVE

6    SUITE 200

7    METAIRIE, LA 70001

8    BY:  JERRY NIELSEN, ESQ.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1    MARCH 16, 2001                        9:30 O'CLOCK A.M.

 2

 3                       P R O C E E D I N G S

 4              THE COURT:  ALL RIGHT.

 5         WOULD YOU CALL THE FIRST MATTER, PLEASE?

 6              THE CLERK:  CIVIL ACTION 99-1910, FONSECA VERSUS

 7    BANKERS INSURANCE COMPANY.

 8              YOUR APPEARANCES, PLEASE?

 9              MR. NIELSEN:  YOUR HONOR, JERRY NIELSEN ON BEHALF OF

10    BANKERS.

11              MR. GLEASON:  YOUR HONOR, GARY GLEASON ON BEHALF OF

12    DEFENDANTS.

13              MR. ROSEN:  ROGER ROSEN ON BEHALF OF THE PLAINTIFF,

14    JOHN FONSECA.

15              THE COURT:  ALL RIGHT.

16         I RECEIVED YOUR SUBSEQUENT BRIEFS ON OUR ISSUES OF

17    PREEMPTION AND JURY TRIAL.

18         SO -- AND I'VE GONE OVER THOSE.  SO DOES EITHER SIDE

19    HAVE ANYTHING FURTHER YOU WOULD LIKE TO ADD?

20              MR. NIELSEN:  YOUR HONOR, I WOULD ASK FOR AN

21    OPPORTUNITY TO HAVE APPROXIMATELY TEN MINUTES TO GO THROUGH THE

22    COURT AS TO PLAINTIFF'S SUPPLEMENTAL MEMORANDUM.  THERE ARE

23    POINTS HE'S RAISING IN THERE WHICH I DO BELIEVE GO TO THE CORE

24    OF WHY COURTS ARE HAVING PROBLEMS WITH THIS STUFF.

25              BUT THAT'S AT THE COURT'S DISCRETION, OBVIOUSLY.
```

1    THE COURT:  OKAY.

2    COUNSEL, DO YOU WISH TO ADD ANYTHING?

3    MR. ROSEN:  NO, YOUR HONOR.

4    THE COURT:  OKAY.  ALL RIGHT.

5    NO, I DON'T FEEL THAT FURTHER ARGUMENT IS NECESSARY.

6    I FEEL THAT THE MATTER HAS NOW BEEN ADEQUATELY

7    COVERED IN TWO SETS OF BRIEFS.

8    NOW, WHAT WE'RE HERE FOR IS THE DEFENDANTS' MOTION

9    FOR SUMMARY JUDGMENT ON THE SECOND CAUSE OF ACTION.

10    THAT IS, THE TORTIOUS BREACH OF CONTRACT, AND A

11    MOTION TO STRIKE THE JURY DEMAND.

12    ON THE MAJOR ISSUE HERE OF WHETHER THE TORTIOUS

13    BREACH OF CONTRACT CLAIM IS PREEMPTED BY FEDERAL LAW AND,

14    SPECIFICALLY, THE NATIONAL FLOOD INSURANCE PROGRAM, AS I'VE

15    SAID, WE'VE NOW HAD TWO SETS OF BRIEFINGS.

16    IT'S QUITE CLEAR FROM THE COMPLAINT THAT THE TORT,

17    THAT IS THE TORTIOUS BASIS FOR THE CLAIM, IS ALL TO DO WITH

18    CLAIMS HANDLING.

19    THERE IS NOT REALLY ANY FRAUD OR MISREPRESENTATION

20    EITHER IN CONNECTION WITH THE CLAIMS HANDLING OR IN CONNECTION

21    WITH THE ISSUANCE OF THE POLICY.

22    BUT THE TORTS ARE ALL ONES SORT OF A LAUNDRY LIST OF

23    POTENTIAL BAD FAITH CLAIMS THAT CAN BE MADE UNDER THE

24    CALIFORNIA STATUTE.

25    SO THE QUESTION IS:  ARE THOSE CLAIMS PREEMPTED?  WE

5

1   HAVE A VERY SUBSTANTIAL BODY OF LAW, BUT IT'S ALL AT THE

2   DISTRICT COURT LEVEL, AND A LOT OF IT QUITE INCONSISTENT.

3           I WAS CONCERNED WITH THE DAVIS DECISION OF MY

4   COLLEAGUE HERE, BUT I ALSO SEE THAT IT'S BEEN DISAGREED WITH

5   ALREADY BY ANOTHER ONE OF OUR COLLEAGUES DOWN IN SAN JOSE.  BE.

6           BE THAT AS IT MAY, I DON'T BELIEVE THAT THE DAVIS

7   CASE IS THE CONTROLLING BODY OF AUTHORITY HERE.

8           IT SEEMS TO ME DAVIS IS DISTINGUISHABLE PRIMARILY

9   BECAUSE IT WAS DEALING SPECIFICALLY WITH A CLAIM OF

10  MISREPRESENTATION.

11          IN ADDITION, THE JUDGE'S DECISION IN DAVIS RELIED

12  HEAVILY ON THE COHEN DECISION OUT OF THE CENTRAL DISTRICT.  BUT

13  COHEN WAS REPUDIATED BY THE JUDGE WHO WROTE IT, AND THEN THE

14  SAME JUDGE WROTE SCHERZ, S-C-H-E-R-Z, COMING TO THE OPPOSITE

15  CONCLUSION AND FINDING THAT THE CLAIMS WERE PREEMPTED.

16          THERE ARE OTHER NUMEROUS DECISIONS FROM AROUND THE

17  COUNTRY.  I THINK THE OVERWHELMING MAJORITY OF WHICH COME DOWN

18  IN FAVOR OF PREEMPTION.

19          PERHAPS ALL FOR VARIOUS REASONS, BUT COMING DOWN

20  WITH THAT RESULT, NEVERTHELESS.

21          I REFER TO THE SCHERZ CASE, AGAIN; TO THE MESSA

22  DECISION; TO THE BIANCHI DECISION OF ANOTHER OF OUR JUDGES OF

23  THIS COURT; TO THE STAPLETON CASE; THE MASON CASE AND THE

24  DURKIN CASE.

25          NOW, AS I SAID, I THINK THAT THESE STAND IN

```
 1   DISTINCTION FROM MY COLLEAGUE'S DECISION IN DAVIS FOR THE

 2   REASON THAT THE DAVIS CASE, I THINK, IS FOUNDED REALLY ON THE

 3   FACT THAT THE PLAINTIFF WAS ASSERTING OUTRIGHT

 4   MISREPRESENTATION THERE.

 5             HERE, HOWEVER, THE ALLEGATIONS, AGAIN, AS I'VE SAID

 6   BEFORE ARE REALLY ONES DEALING WITH CLAIMS HANDLING AND THE

 7   SPEED OF THE CLAIMS HANDLING AND WHETHER IT WAS PROPER TO DENY

 8   THE CLAIM.

 9             SO FOR THOSE REASONS, I'M FINDING THAT THE CAUSE OF

10   ACTION DEALING WITH THE TORTIOUS BREACH OF CONTRACT IS

11   PREEMPTED.

12             THAT WILL, OF COURSE, LEAVE PLAINTIFF WITH THE CAUSE

13   OF ACTION FOR BREACH OF CONTRACT WHICH, I GUESS, COMES DOWN TO

14   THE QUESTION OF WHETHER THE POLICY COVERS OR NOT.

15             AND WE ALREADY HAVE DATES SET FOR THAT CULMINATING

16   IN A TRIAL IN AUGUST.

17             WITH RESPECT TO THE ISSUE ON JURY DEMAND, DEFENDANT

18   HAS CITED A COUPLE OF CASES, PRINCIPAL ONE BEING THE VAN HOLT

19   DECISION OUT OF THE THIRD CIRCUIT, FOR THE PROPOSITION THAT A

20   SUIT AGAINST AN INSURER THAT'S IN THE SAME POSITION AS THE

21   INSURER HERE IS FUNCTIONALLY THE EQUIVALENT OF A SUIT AGAINST

22   THE FEMA FEDERAL AGENCY, WHICH, THEREFORE, IS IN REALITY A SUIT

23   AGAINST A FEDERAL AGENCY AND IS NOT ENTITLED TO A JURY TRIAL.

24             NOW, PLAINTIFF HERE REALLY HAS NOT REPLIED TO THAT

25   AT ALL.
```

1          LOOKING AT PAGE SIX OF ITS BRIEF THERE'S JUST A

2    VERY -- ONE PARAGRAPH STATEMENT HERE, BUT IT DOESN'T REALLY

3    DISCUSS THE LEGAL ISSUES THAT ARE RAISED BY THE DEFENSE.

4          AND I THINK THE DEFENSE POSITION IS ESSENTIALLY

5    CORRECT THAT THE ECONOMIC INTEREST AT ISSUE HERE IS THAT OF

6    FEMA, SINCE THEY ARE THE ONES WHO WOULD PAY THE LIABILITY.

7          AND SO THIS SHOULD BE TREATED AS A SUIT AGAINST A

8    FEDERAL AGENCY.

9          SO FOR THAT REASON, THE DEFENDANT'S MOTION TO STRIKE

10   THE JURY DEMAND WILL ALSO BE GRANTED.

11         AND WE ARE NOW SET FOR THE LAST HEARING ON MOTIONS,

12   IF THERE IS SUCH A MOTION, ON JULY THE 20TH; PRETRIAL

13   CONFERENCE ON AUGUST THE 2ND; AND TRIAL, IF I CAN READ MY

14   NOTES, ON AUGUST THE 13TH.

15         ALL RIGHT.  THANK YOU VERY MUCH.

16         MR. NIELSEN:  THANK YOU, YOUR HONOR.

17         MR. ROSEN:  YOUR HONOR, MAY I ASK ONE POINT?

18         WE HAVE BEEN DISCUSSING AMONGST OURSELVES, ONCE THIS

19   THRESHOLD ISSUE IS DECIDED, WHICH YOU'VE NOW DECIDED, THAT IT

20   MIGHT BE APPROPRIATE TO SEE A MAGISTRATE TO DISCUSS SETTLEMENT.

21         THE COURT:  ALL RIGHT.

22         I'LL BE HAPPY TO REFER YOU TO A MAGISTRATE JUDGE.

23         THE CLERK WILL DO THAT TODAY, BUT YOU WON'T HEAR

24   FROM THE MAGISTRATE JUDGE FOR A FEW DAYS UNTIL THE TIMING IS

25   WORKED OUT.

8

1          MR. ROSEN:  THANK YOU VERY MUCH.

2        THE COURT:  ALL RIGHT.  THANK YOU.

3        MR. NIELSEN:  THANK YOU, YOUR HONOR.

4        MR. GLEASON:  THANK YOU, YOUR HONOR.

5      (THEREUPON, THIS HEARING WAS CONCLUDED.)

9

CERTIFICATE OF REPORTER

1

2      I, KATHERINE POPE WYATT, THE UNDERSIGNED, HEREBY

3  CERTIFY THAT THE FOREGOING PROCEEDINGS WERE REPORTED BY ME, A

4  CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED

5  BY ME INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE

6  AND TRUE RECORD OF SAID PROCEEDINGS.

7      I FURTHER CERTIFY THAT I AM NOT OF COUNSEL OR

8  ATTORNEY FOR EITHER OR ANY OF THE PARTIES IN THE FOREGOING

9  PROCEEDINGS AND CAPTION NAMED, OR IN ANY WAY INTERESTED IN THE

10  OUTCOME OF THE CAUSE NAMED IN SAID CAPTION.

11      THE FEE CHARGED AND THE PAGE FORMAT FOR THE

12  TRANSCRIPT CONFORM TO THE REGULATIONS OF THE JUDICIAL

13  CONFERENCE.

14      FURTHERMORE, I CERTIFY THE INVOICE DOES NOT CONTAIN

15  CHARGES FOR THE SALARIED COURT REPORTER'S CERTIFICATION PAGE.

16      IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND THIS

17  24TH DAY OF APRIL, 2001.

18

19

20

21

22

23  _Katherine_

24  _____

25

KATHERINE WYATT, OFFICIAL REPORTER, USDC, RPR, RMR
(415) 487-9834 CSR NO. 9866