EXHIBIT 13

DECL OF GARY R. GLEASON IN
SUPP. OF DEF.'S MTN TO DISMISS
STATE LAW CLAIMS

Nos. 98-7015 & 99-10305

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

ALEX W. NEWTON,

Plaintiff-Appellee,

v.

CAPITAL ASSURANCE COMPANY, INC.,

Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

BRIEF FOR THE UNITED STATES AS
AMICUS CURIAE IN SUPPORT OF REHEARING

DAVID W. OGDEN
*Acting Assistant Attorney General*

J. DON FOSTER
*United States Attorney*

WILLIAM KANTER
 (202) 514-4575
JEFFRICA JENKINS LEE
 (202) 514-5091
 *Attorneys, Appellate Staff*
 *Civil Division, Room 9546*
 *Department of Justice*
 *601 D St., N.W.*
 *Washington, D.C.  20530-0001*

## TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT PURSUANT TO 11th CIR. R. 26.1     C-1

STATEMENT OF INTEREST OF THE UNITED STATES ................... 1

STATEMENT OF THE ISSUE .............................     2

STATEMENT OF THE CASE .... ................................. 2

    1.    Statutory And Regulatory Scheme ................... 2

    2.    Facts And Procedural Background ................... 6

SUMMARY OF ARGUMENT                                       7

ARGUMENT                                                  8

    PREJUDGMENT INTEREST IS NOT RECOVERABLE IN CASES BROUGHT

    TO COLLECT UNDER INSURANCE POLICIES ISSUED PURSUANT TO

    THE FEDERAL FLOOD INSURANCE ACT                       8

CONCLUSION             ................................. 15

CERTIFICATE OF SERVICE

ADDENDUM

i

### TABLE OF AUTHORITIES[*]

<u>Cases</u>:

                                                              <u>Page</u>

*In re Estate of Lee*, 812 F.2d 253 (5th Cir. 1987) ..... 3, 7, 13

*Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386

  9th Cir. 2000)                          3, 5, 8, 12, 13, 14

*Gowland v. Aetna*, 143 F.3d 951 (5th Cir. 1998)      1, 5, 8, 13

*Library of Congress v. Shaw*, 478 U.S. 310  1986)             8

*Newton v. Capital Assurance Co., Inc.*, 209 F.3d 1302

  (11th Cir. 2000)                                  *passim*

*OPM v. Richmond*, 496 U.S. 414 (1990)                   2, 13

Parsons v. Omaha Prop. & Cas. Co.,

 19 F. Supp. 2d 588 (N.D. W.Va. 1988)                     10

*Sandia Oil Co. v. Beckton*, 889 F.2d 258 (10th Cir. 1989)   8, 13

*Sodowski v. NFIP*, 834 F.2d 653, 657 (7th Cir.

 *cert. denied*, 486 U.S. 1043 (1987)                        3

*Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161

 (3d Cir. 1998) (on rehearing)              5, 6, 8, 10, 13

*West v. Harris*, 573 F.2d 873 (5th Cir. 1978),

 *cert. denied*, 440 U.S. 946 (1979)                     3, 12

---

[*]Authorities chiefly relied upon are marked by asterisks.

ii

<u>Constitution</u>:

  United States Constitution:

    Appropriations Clause, U.S. Const. art. I, § 9, cl. 7 . 2, 13

<u>Statutes</u>:

  28 U.S.C. § 517 ............................................. 1

  28 U.S.C. § 1331 ............                                    6

  28 U.S.C. § 1441 ......................................... 6

  National Flood Insurance Act of 1968:

  42 U.S.C. §§ 4001-4129 ................................. 1, 2

  42 U.S.C. § 4001(b)                                           4

  42 U.S.C. § 4001(d                                            4

  42 U.S.C. § 4011(c)(1 ...................................... 3

  42 U.S.C. § 4011(c)(2                                         4

  42 U.S.C. § 4016 .......................................... 5

  42 U.S.C. § 4017(a ................................... 1, 3, 7

 *42 U.S.C. § 4017(d)                                1, 3, 5, 7

  42 U.S.C. § 4019 .......................................... 4

  42 U.S.C. § 4071 .......................................... 3

  42 U.S.C. § 4071(a) ....................................... 3

  42 U.S.C. § 4071(a (1                                   .. 3

  42 U.S.C. § 4072 .................................... 3, 4, 5

  42 U.S.C. § 4081 ....................................... 4

  42 U.S.C. § 4081(a) ................................... 3, 9

Regulations:

44 C.F.R. § 61.4                                              4

44 C.F.R. § 61.13(d)                                          4

44 C.F.R. § 61.13(e                                           4

44 C.F.R. § 61.13(f)                                      4, 5

44 C.F.R. § 62.23 ............................................ 4

44 C.F.R. § 62.23(a                                         4,9

44 C.F.R. § 62.23(c)                                          4

      F.R. § 62.23(d)                                         5

44 C.F.R. § 62.23(g)                                          4

44 C.F.R. § 62.23(i) 1)                                       4

44 C.F.R. § 62.23(i (3)                                      11

44 C.F.R. § 62.23(i (6)                                    5, 6

44 C.F.R. § 62.23(i (9)                                      11

      F.R. pt. 61, app. A(1), art. 9(R).. .................... 5, 6

44 C.F.R. pt. 62, app. A, art. II(E) ......................... 10

44 C.F.R. pt. 62, app. A, art. III(A) ......:................. 12

44 C.F.R. pt. 62, app. A, art. III(B)                        12

44 C.F.R. pt. 62, app. A, art. III (C                         9

44 C.F.R. pt. 62, app. A, art. III (C   2)                   11

44 C.F.R. pt. 62, app. A, art. III (D)                        7

44 C.F.R. pt. 62, app. A, art. III(D) 1) ..................... 10

*44 C.F.R. pt. 62, app. A, art. III(D)(2)          4, 7, 9, 10

```
              app    art  III(D)

     pt       app  A  art  III(D)(3) (4)

     pt       app  A, art

              app              (A)

F    pt       app  A, art  VII(B)
```

## STATEMENT OF INTEREST OF THE UNITED STATES

Pursuant to 28 U.S.C. § 517, the United States submits this brief on behalf of the Federal Emergency Management Agency "FEMA") as *amicus curiae* in support of panel rehearing

This case arises under the National Flood Insurance Program "NFIP" a program designed to provide property owners with protection from financial losses through an insurance mechanism that "is supported by the federal treasury." *Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir. 1998). The NFIP is authorized by the National Flood Insurance Act ("NFIA" or "the Act"), 42 U.S.C. §§ 4001-4129, and is administered by the Federal Insurance Administration "FIA"), a component of FEMA. Under Part B of the Act, a standard flood insurance policy ("SFIP" may be written directly by FEMA, or through private insurers known as "Write Your Own" ("WYO" companies. Either way, flood loss claims, whether insured by FEMA or private insurance companies, are paid out of the United States Treasury. 42 U.S.C. §§ 4017(a), (d)

Because the NFIP is a federal government program, administered and operated by a federal agency, subsidized by federal taxpayers with all claims paid out of federal funds – the United States has a substantial interest in the proper interpretation and application of the Act and the FEMA regulations at issue in this case. Indeed, the United States is greatly concerned that the

---

[1]/By order of June 21, 2000, the Court granted the motion of the United States to file an *amicus curiae* brief in this matter.

Panel decision – which permits a prejudgment interest award in a case arising under the NFIP – impermissibly allows a remedy would draw funds from the federal Treasury in a manner that is not authorized by Congress. *See OPM v. Richmond*, 496 U.S. 414 (1990) (the Appropriations Clause prohibits the judiciary from granting any money claim against the federal government that is authorized by statute). Further, it is of critical importance to the United States that the policies issued by WYO companies be administered and treated by the courts in identical fashion to those issued directly by FEMA: First, to protect taxpayer funds; and second, to ensure that it remains economically feasible for the flood insurance program to operate with participation by companies

STATEMENT OF THE ISSUE

Whether the Panel erred in holding that an award of prejudgment interest against a "Write Your Own" private insurer under the National Flood Insurance Program would not be paid from the United States Treasury.

STATEMENT OF THE CASE

1. <u>Statutory And Regulatory Scheme</u>.[2] Pursuant to the National Flood Insurance Act of 1968, 42 U.S.C. §§ 4001-4129, Congress established the National Flood Insurance Program to provide

---

[2]The text of the relevant portions of the National Flood Insurance Act and its implementing regulations is reproduced in an addendum to this brief.

2

coverage at or below actuarial rates, because private insurance companies were unable to economically underwrite such much-needed policies. Before 1978, the program was run by a pool of private insurance companies that shared the underwriting risks, with federal financial participation. *See West v. Harris*, 573 F.2d 873, 875 n.1, 882 5th Cir. 1978), *cert. denied*, 440 U.S. 946 (1979); 42 U.S.C. § 4011(c 1). But in 1978, the federal government took control of the program and assumed all operational responsibilities. *In re Estate of Lee*, 812 F.2d 253, 256 5th Cir. 1987); *Sodowski v. NFIP*, 834 F.2d 653, 657 7th Cir. *cert. denied*, 486 U.S. 1043 1987). FEMA currently operates the flood insurance program under Part B of the Act, 42 U.S.C. §§4071, 4072, and pays claims out of the National Flood Insurance Fund established by FEMA in the United States the Treasury. *Id.* at §§4017(a),(d); *see Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386, 392 (9th Cir. 2000)

Under Part B, FEMA "carr[ies] out the program of flood insurance authorized under the Act] through the facilities of the Federal Government." 42 U.S.C. §4071(a). In so doing, it may use federal employees and/or private insurance companies "as fiscal agents of the United States." *Id.* at §4071(a)(1). *Lee*, 812 F.2d at 256. FEMA is also authorized to enter into any necessary "contracts, agreements, or other appropriate arrangements." §4081(a). FEMA has done so, and thus flood insurance policies can be issued by FEMA directly and by WYO companies like defendant-appellant herein, Capital Assurance Company, Inc. "Capital")

- 3 -

§4081; 44 C.F.R. §§ 61.13(f), 62.23. Congress considered partici-
pation of private insurance companies an essential part of the
program, see 42 U.S.C. §§ 4001(b), (d), 4081, and WYO companies
write more than 90% of the policies

The WYO companies are "fiscal agents" of the federal
government, but not general agents, and FEMA has directed them to
issue, market, and administer policies in their own names.    44
C.F.R. §§ 61.13(f), 62.23(a), (g). The companies are dealing with
federal funds:   FEMA uses the insurance companies on an  "other
than a risk-sharing basis," §4011(c)(2); so it is the federal gov-
ernment, and not the WYO companies, that pays the flood loss
claims. 42 U.S.C. § 4072.

The terms and conditions of all federal flood policies are
fixed by FEMA regulation as an SFIP, the provisions of which may
not be varied or waived except by the express written consent of
the  Federal  Insurance  Administrator.  44  C.F.R.  §§  61.4(b),
61.13(d), (e), 62.23(c), (d).  Under the Act, FEMA is authorized
"to prescribe regulations establishing the general method or
methods by which proved and approved claims for losses may be
adjusted and paid .    " 42 U.S.C. § 4019. WYO claim adjustments
are binding on FEMA.  44 C.F.R. § 62.23(i (1). Further, FEMA will
reimburse for extra-contractual judgments for acts that are not
"significantly" outside the scope of the contract arrangement with
FEMA.   44 C.F.R. pt. 62, app. A, art. III(D)(2),  4).

Premiums collected by the WYO companies are, after deducting
- 4 -

fees and costs, deposited in the National Flood Insurance Fund in Treasury.   42 U.S.C. § 4017(d).   Premiums are federal funds from the moment they are collected.  44 C.F.R. pt. 62, app. A, art VII(B) (WYO must remit to Treasury "all funds, including interest, required to meet current expenditures" [currently limited to $5,000]).  The Treasury also provides from appropriated funds any needed loans, which are paid into this account.  42 U.S.C. § 4016.

Money to pay claims is drawn directly from the Treasury through letters of credit.  44 C.F.R. pt. 62, app. A, art. IV. Payments, whether on policies written by FEMA directly or by participating WYO companies, are thus paid from United States Treasury funds.  *Flick*, 205 F.3d at 394 ("flood losses, whether insured by FEMA or by a participating WYO insurer are paid out of the National Flood Insurance Fund"); *Van Holt v. Liberty Mut. Fire Co.*, 163 F.3d 161, 167  3d Cir. 1998) (on rehearing)  "FEMA bears the risk and financial responsibility regardless of whether the lawsuit formally names FEMA or a WYO company as the defendant); *Gowland*, 143 F.3d at 955 (payments made pursuant to SFIP written by WYO insurer are paid from federal treasury)

The Act authorizes suit against the FEMA Director upon the disallowance of a claim.  42 U.S.C. § 4072.  However, the Director has by regulation directed that the WYO companies be substituted for FEMA in WYO-issued policies and that the companies be sued in his stead.  44 C.F.R. §§ 61.13(f), 62.23(d), (i (6); 44 C.F.R. pt. 61, app. A(1), art. 9(R).  "[T]he responsibility for defending

- 5 -

claims will be upon the Write Your Own Company and defense costs will be part of the       claim expense allowance       " 44 C.F.R. § 62.23(i)(6); see *Van Holt*, 163 F.3d at 165. In SFIP language prescribed by regulation, WYO policy holders are directed to file any lawsuits against the WYO companies. 44 C.F.R. pt. 61, app. A(1), art. 9(R).

    2. <u>Facts And Procedural Background</u>. Plaintiff Alex W. Newton owns a vacation home in Orange Beach, Alabama, for which he purchased a SFIP from Capital, a WYO company. In 1995, following Hurricane Opal, Newton filed a claim under his SFIP. *Id.* After the insurer denied a portion of the claim, Newton sued Capital and obtained an award of compensatory damages and prejudgment interest from the district court.[3] Capital appealed only the prejudgment interest award to this Court.

    In a decision issued on April 20, 2000, the Panel upheld the district court's decision, holding that the award of prejudgment interest against the WYO insurer does not violate the "no-interest" rule of federal sovereign immunity, based on its conclusion that there was no certainty that the interest award would be paid from federal funds.

---

[3]Newton filed suit in an Alabama state court, however, Capital removed the action to federal district court. *See* 28 U.S.C. §§ 1331, 1441.

- 6 -

## SUMMARY OF ARGUMENT

Although the Panel decision recognizes that the "no-interest" rule of sovereign immunity would bar an award of prejudgment interest against FEMA as an instrumentality of the United States in this case arising under the NFIP, it holds that prejudgment interest _is_ recoverable against a private insurer participating in the flood insurance program. In so holding, the Panel mistakenly believed that such an award would not necessarily be paid from federal funds.

However, when properly understood, the NFIP statutory and regulatory scheme establishes that all payments made pursuant to an SFIP are "a direct charge on the public treasury." _See Lee_, 812 F.2d at 256; 42 U.S.C. §§ 4017(a),(d)(authorizing the creation of a flood insurance fund in the United States Treasury to disburse funds to cover the cost incurred in the adjustment and payment of "_any_ claims for [flood] losses") (emphasis added); 44 C.F.R. pt 62, app. A, art. III(D)(2)("[l]oss payments include payments as a result of litigation" and shall be made by the WYO insurer from funds retained in segregated bank accounts established pursuant to the regulations). _A fortiori_, an award of prejudgment interest is barred in a case arising under the NFIP whether the policy was written by FEMA or a WYO company. The Panel decision therefore seriously misconstrues the relationship between FEMA and WYO insurers in the operation of the flood insurance program

The decision is also inconsistent with the decisions of the

- 7 -

other appellate courts that have recognized that <u>all</u> payments under
the NFIP are made from federal funds.    *See Flick v. Liberty Mut.*
*Fire Ins. Co.*, 205 F.3d 386, 394 (9th Cir. 2000); *Van Holt*
F.3d at 167; *Gowland*, 143 F.3d at 955; *Sandia Oil Co. v. Beckton*,
889 F.2d 258, 263  10th Cir. 1989). Moreover, the Panel decision is
in tension with *Gowland,* where the Fifth Circuit held that the
federal government's immunity extended to a WYO insurer to bar an
equitable estoppel claim in a suit arising under the NFIP.

ARGUMENT

> **PREJUDGMENT INTEREST IS NOT RECOVERABLE IN
> CASES BROUGHT TO COLLECT UNDER INSURANCE
> POLICIES ISSUED PURSUANT TO THE FEDERAL
> FLOOD INSURANCE ACT.**

As the Panel recognized, the no-interest rule bars interest
awards in suits directly against FEMA because "nothing in the NFIA
indicates a Congressional waiver of immunity from interest awards
*Newton v. Capital Assurance Co., Inc.*, 209 F.3d 1302, 1305 (11th
Cir. 2000).[4]  The Court also "accept[ed] th[e] proposition in the
abstract" that the no-interest rule could apply to private
entities, but "only when the interest charge really is, for
relevant purposes, directly against the federal government." *Id.* at
1306. The Panel concluded, however, that the "regulations simply do

---

[4]As the Supreme Court has explained, "[t]he no-interest rule
provides an added gloss of strictness upon" the usual rules of
federal sovereign immunity that waivers must be strictly construed
in favor of the sovereign. *Library of Congress v. Shaw*, 478 U.S.
310, 318 (1986).

make prejudgment interest awards direct charges on the government," and that the reimbursement scheme "does not unequivocally require prejudgment interest awards to be paid from federal coffers rather than from those of the WYO company." *Id.* at 1307. The Court therefore held that "the no-interest rule does not prohibit prejudgment interest against WYO companies." *Id.* at 1305.

In support of this conclusion, the Panel stated that "[i]f reimbursed at all," prejudgment interest would be considered "loss payment" under FEMA's regulations. *Id.* at 1307; *see* 44 C.F.R. 62, app. A, art. III(D)(2). The Court then opined that FEMA reimburses loss payments according to their placement in one of three categories,[5] but noted it was "uncertain" about which category prejudgment falls into. *Id.* at 1308. The Court stated that the "key point . . is that reimbursement is not automatic under any of these categories" because FEMA could deny payment if, for example, the WYO company failed to comply with certain procedural requirements, was negligent, or the loss was incurred outside the scope of the FEMA/WYO arrangement. *Id.* (citing 44 C.F.R. pt. 62, app. A, art. III(D)(3)-(4)

The Panel misconstrues how the WYO program operates under Part B of the Act and pertinent regulations. Under Part B of the NFIA, private insurers write their own flood insurance policies, pursuant

---

[5]The categories cited by the Panel were: (1) unallocated loss adjustment; (2) allocated loss adjustment; or special allocated loss expenses. 209 F.3d at 1307-08 (citing 44 C.F.R. pt. 62, app. A, art. III(C).

arrangements entered into with the FIA Administrator. *See* 42 U.S.C. § 4081(a); 44 C.F.R. § 62.23(a). The WYO insurers must then remit the insurance premiums to the FIA, except for funds needed to meet current expenditures, not to exceed $5,000. 44 C.F.R. pt. 62, A, art. VII(B). When WYO companies deplete their net premium income, "a phenomenon that occurs regularly because the companies must forfeit a significant portion of the proceeds from premiums, they draw money from FEMA through letters of credit to pay claims.

*Van Holt*, 163 F.3d at 165; 44 C.F.R., pt. 62, app. A, art IV(A) (letters of credit may be drawn for loss payments)

"Loss payments," a term clearly defined in FEMA's regulations, "include payments as a result of litigation which arises under the scope of this Arrangement," are made from funds retained by the WYO company in a bank account established under Article II of the Arrangement, or through letters of credit as described above. *See* 44 C.F.R. pt. 62, app. A, art. III(D)(1 & (2). Premium payments are considered federal funds from the time they are collected by the WYO company. *See* 44 C.F.R. pt. 62, art. II(E) "[a]ll funds not required to meet current expenditures shall be remitted to the United States Treasury     ."); *Parsons Footwear, Inc. v. Omaha Property & Cas. Co.*, 19 F. Supp. 2d 588, 590 (N.D. W. Va. 1998) "SFIP premiums are federal funds"). Thus, there can be no uncertainty that, whether paid from retained funds or from letters of credit, loss payments, and, therefore, interest payments, would be paid from federal funds. Further, the categories of expense

- 10 -

allowances identified by the Panel, which are additional expenses above loss payments, are all defined in FEMA's regulations, and do not include prejudgment interest or other loss payments.[6] *See* 44 C.F.R. § 62.23(i(3 (defining "loss adjustment" as "the expense allowance to cover costs of * * * adjusters"); § 62.23(i 9) (defining "special allocated loss adjustment expenses" to include "such items as: nonstaff attorney fees, engineering fees and special investigation fees over and above normal adjustment practices"); 44 C.F.R. pt. 62, app. A, art. III(C)(2) (stating that "[a]llocated loss adjustment expense shall be reimbursed to the Company pursuant to a 'Fee Schedule' coordinated with the [WYO] Company and provided by the Administrator")

Further, the Panel stated that the determinative factor in its analysis was that reimbursement by FEMA is not "automatic." 209 F.3d at 1308. But, as explained above, the direct charge to the federal Treasury for "loss payments" is indeed automatic. In any event, none of the provisions in Article III(D) cited by the Panel would bar payment in this case. Here, Newton submitted a claim arising from a hurricane. There is no dispute that the loss is payable under the policy, and there is no allegation that Capital defaulted on any of the procedural requirements under Article III(D) or that any other regulation limits the government's

---

[6]/It was therefore inaccurate for the Panel to state that loss payments are reimbursed by FEMA according to their placement in one of the three identified categories of loss adjustment expenses. *See* 209 F.3d at 1307.

11

liability in this case.[7] Thus, the procedural limitations noted by the Panel are simply not relevant to the question of who would be responsible (FEMA or the WYO insurer) for payment of prejudgment interest.

Finally, the Court relied on *West v. Harris*, 573 F.2d 873 (5th Cir. 1978), which held that prejudgment interest was recoverable against a private insurer under the NFIP. The Panel acknowledged that *West* is distinguishable from this case because it concerned the now discontinued flood insurance program as it operated under Part A of the NFIA, but stated that "the dispositive question remains whether the no-interest rule is being invoked to prevent a direct charge on the federal treasury." 209 F.3d at 1309.

But as we have explained, and as the other appellate courts that have analyzed the operation of the NFIP in analogous situations have consistently held, all claims on SFIPs arising out of the Part B program, whether written by FEMA or WYO companies, <u>are</u> paid from the federal Treasury. *See, e.g.*, *Lee*, 812 F.2d at 256 (to award interest on SFIPs under Part B would "be a direct charge on the

---

[7]/The panel was also incorrect in suggesting that an interest award would be payable from the private insurer's company profits, and thus would not come out of federal coffers. Although WYO companies may retain a percentage of the premiums received for the specified purposes of marketing, administrative and operating expenses, including commissions, as an expense allowance, 44 C.F.R. pt. 62, app. A, art. III(A),(B), this expense allowance is calculated based on an estimate of expenses, which does not include prejudgment interest. *Cf. Flick*, 205 F.3d at 392-93 (rejecting argument that WYO companies retain sufficient amount of premiums in segregated accounts to pay flood losses as they occur).

public treasury," and is not "possible without express congressional consent"); *Sandia Oil Co.*, 889 F.2d at 263 (under the Part B flood insurance program operated by FEMA, "the ultimate risk bearer for all expenses of the program is the [federal Treasury]"); *Gowland*, 143 F.3d at 955 ("[a]lthough the Gowlands' policy was written by Aetna, a private insurance company, payments made pursuant to that policy are 'a direct charge on the public treasury;'" therefore the court was powerless to uphold a claim for equitable estoppel against the WYO insurer because such a holding would violate the Appropriations Clause) (citing *OPM v. Richmond*, 496 U.S. at 425); *Van Holt*, 163 F.3d at 166, 167 ("a suit against a WYC company is the functional equivalent of a suit against FEMA" because "FEMA bears the risk and financial responsibility regardless of whether the lawsuit formally names FEMA or a WYO company as the defendant"); *Flick*, 205 F.3d at 394 ("[b]ecause flood losses, whether insured by FEMA or by a participating WYO insurer, are paid out of [federal monies], a claimant under [an SFIP] policy must comply strictly with the terms and conditions that Congress has established for payment") (citing Appropriations Clause, U.S. Const. art. I, § 9, cl. 7). Similarly, in this case, because federal funds would necessarily be tapped to pay an award of prejudgment interest here, the no-interest rule must apply.

Moreover, treating the WYO insurer as being cloaked with immunity in this situation also serves the "compelling government interest in assuring uniformity of decision in cases involving the

- 13 -

NFIP." *Flick*  205 F.3d at 396 n.14 (citations omitted).  It is of great importance to the United States that policies issued by FEMA and those issued by WYO insurers are construed by the courts in the same fashion so as to protect the public fisc and to ensure that it remains economically feasible for the NFIP to continue to operate with the participation of private insurance companies

CONCLUSION

For the foregoing reasons, the panel rehearing should be granted and the district court's judgment should be reversed.

Respectfully submitted

DAVID W. OGDEN
*Acting Assistant Attorney General*

J. DON FOSTER
*United States Attorney*

WILLIAM KANTER
(202) 514-4575
JEFFRICA JENKINS LEE
(202) 514-5091
*Attorneys, Appellate Staff*
*Civil Division, Room 9546*
*Department of Justice*
*601 D Street, N.W.*
*Washington, D.C. 20530-0001*

JUNE 2000

14

CERTIFICATE OF SERVICE

I hereby certify that on June 23  2000, I caused copies of the foregoing "BRIEF FOR THE UNITED STATES AS *AMICUS CURIAE* IN SUPPORT OF PETITION FOR REHEARING" to be to dispatched, via Federal Express overnight delivery to

Mr. Thomas K. Kahn
Clerk, United States Court of Appeals
  for the Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, GA   30303-6147

*Counsel for the Appellant*

Richard W. Vollmer, III, Esq.
Roger C. Guilian, Esq.
Killion & Vollmer, P.C.
2513 Dauphin Street
P.O. Box 7807
Mobile, AL 36670

*Counsel for the Appellee*

Bruce K. McKee, Esq.
Hare, Wynn, Newell & Newton
290 21st Street North, Suite 800
Birmingham, AL 35203

Richard Bounds, Esq
Cunningham, Bounds, Yance, Crowder & Brown
P.O. Box 66705
Mobile, AL 36660

JEFFRICA JENKINS LEE
Attorney for the United States

*NEWTON v. CAPITAL ASSURANCE CO., INC.*

Case Nos. 98-7015, 99-10305


CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT PURSUANT TO 11th CIR. R. 26.1

Richard Bounds, counsel for the Appellee.

Dianna Bovender, President, Flood Underwriters of the Southeast, Inc.

Honorable Charles R. Butler, Chief Judge, United States District Court for the Southern District of Alabama, Southern Division.

Capital Assurance Company, Inc

Cunningham, Bounds, Yance, Crowder & Brown, counsel for the Appellee

Federal Emergency Management Agency.

J. Don Foster, United States Attorney for the Southern District of Alabama.

Roger C. Guilian, counsel for the Appellant

Hare, Wynn, Newell & Newton, counsel for the Appellee

Christine Hassard, counsel for TIG Premier Insurance Company.

William Kanter, counsel for the United States of America.

Killion & Vollmer, P.C., counsel for the Appellant.

Jeffrica Jenkins Lee, counsel for the United States of America.

Bruce K. McKee, counsel for the Appellee.

C-1 of 2

*NEWTON v. CAPITAL ASSURANCE CO., INC.*

Case Nos. 98-7015, 99-10305

David W. Ogden, Acting Assistant Attorney General, Civil Division, Department of Justice.

Alex W. Newton, Appellee

TIG Premier Insurance Company.

Richard W. Vollmer, III, counsel for the Appellant.

J. David Welch, Vice President, Flood Underwriters of the Southeast, Inc

_____
JEFFRICA JENKINS LEE
Counsel for the United States

C-2 of 2