UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEFANIE COOK and NATHANIEL COOK, <br> Plaintiffs, <br> v. <br> USAA GENERAL INDEMNITY COMPANY, and DOE 1 through DOE 100, inclusive, <br> Defendants. | No. C-07-4042 SC <br><br> ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR JUDGMENT REGARDING STATE LAW CLAIMS; GRANTING DEFENDANT'S MOTION TO <u>QUASH JURY DEMAND</u> |

**I.   INTRODUCTION**

This suit arises out of the alleged breach of a flood insurance contract held by plaintiffs Stefanie and Nathaniel Cook ("Plaintiffs" or "Cooks").  See Compl., Docket No. 1.  Before the Court are three motions brought by Defendant, USAA General Indemnity Co. ("USAA" or "Defendant").  First, USAA moves for judgment on the pleadings with respect to Plaintiffs' state law claims.  Docket No. 21 ("State Claims Mot.").  Second, USAA moves to quash Plaintiffs' jury demand.  Docket No. 22 ("Mot. to Quash").  Finally, USAA moves for summary judgment on all claims. Docket No. 23 ("MSJ").  The Cooks did not oppose the State Claims Motion or the Motion to Quash, but did oppose the MSJ.  Docket No. 28.  USAA replied.  Docket No. 33.  The Court subsequently ordered supplemental briefing to address two questions related to the MSJ. Docket Nos. 36 ("Supp. Briefing Order"), 38 ("Pls. Supp. Br."), 41

("Def. Supp. Br.").

For the reasons set forth herein, the Court hereby DENIES USAA's MSJ, GRANTS USAA's Motion to Quash, and GRANTS USAA's State Claims Motion.

**II.  FACTUAL BACKGROUND**

    **A.  Purchase of Home**

Plaintiffs purchased their home at 83 Shady Lane in Ross, California, in May 2005.  Cook Decl. at 3.[1]  Prior to purchasing the home, Plaintiffs hired Paul Pieri, a civil engineer, to inspect the home.  See Pieri Decl. at 1-2.[2]  According to Pieri, at the time Plaintiffs purchased 83 Shady Lane, "the home was in excellent shape."  Id. at 2.  Nathaniel Cook also inspected the home prior to purchase and reached the same conclusions Pieri did:

> I personally inspected the home and observed the home to be virtually free of cracking, with no ceiling damage from cracks, no broken or dislodged trim or moldings and no cracked or unleveled floor elevations.  In fact, the building was in excellent finish condition for its age and possessed a high quality grade of paint finish on the interior surfaces.  I know from my observations made prior to our purchase of 83 Shady Lane, that the home was in excellent shape.

Cook Decl. at 1-2.

    **B.  Standard Flood Insurance Policy**

Following the purchase of their home, Plaintiffs purchased a

---

[1] Plaintiff Nathaniel Cook submitted a declaration in opposition to USAA's MSJ.  Docket No. 28-3.

[2] Paul Pieri submitted a declaration in opposition to USAA's MSJ.  Docket No. 28-2.

2

1  Standard Flood Insurance Policy ("SFIP") from USAA.  See Swartz
2  Decl. ¶ 4.[3]  Plaintiffs' SFIP, number 003-16-60-68, had building
3  coverage limits of $250,000 and contents coverage limits of
4  $100,000, with a $5,000 deductible for each type of coverage.  Id.
5  USAA issued Plaintiffs' SFIP as a "Write-Your-Own" ("WYO") Program
6  Carrier participating in the National Flood Insurance Program
7  ("NFIP"), established by the National Flood Insurance Act of 1968,
8  42 U.S.C. § 4001 et seq.  Id. ¶¶ 5-7.  Claims from the SFIP are
9  paid directly with U.S. Treasury funds, not with the insurance
10 carrier's funds.  See id. ¶ 5.

11     The SFIP is codified as a federal regulation at 44 C.F.R. Pt.
12 61, App. A(1).  See Swartz Decl. ¶ 5; see also Gleason State Claim
13 Decl. Ex. 1 (copy of SFIP).[4]  Pursuant to the SFIP, USAA agreed to
14 pay "for direct physical loss by or from flood to" Plaintiffs'
15 property.  SFIP Art. I.  The phrase "direct physical loss by or
16 from flood" is defined in the SFIP as "Loss or damage to insured
17 property, directly caused by a flood.  There must be evidence of
18 physical changes to the property."  Id. Art. II(B)(12).  The basic
19 portion of the SFIP, "Coverage A - Building Property," insures
20 against direct physical loss by or from flood to the dwelling.
21 See id. Art. III(A)(1).  In addition to Coverage A, Coverage D

---

[3] Maureen Swartz, the USAA Claims Service Manager for Plaintiffs' SFIP, submitted a declaration in support of USAA's MSJ.  Docket No. 23-4.

[4] Gary Gleason, counsel for USAA, submitted a declaration in support of USAA's MSJ.  Docket No. 23-2 ("Gleason Decl.").  Gleason also submitted a declaration in support of the State Claims Motion, as well as a supplemental declaration in support of the MSJ.  Docket Nos. 21-2 ("Gleason State Claim Decl."), 34 ("Gleason Supp. Decl.").

3

addresses the increased cost of compliance with building codes:

> 1. General.
>
> This policy pays you to comply with a State or local floodplain management law or ordinance affecting repair or reconstruction of a structure suffering flood damage. Compliance activities eligible for payment are: elevation, floodproofing, relocation, or demolition (or any combination of these activities) of your structure. Eligible floodproofing activities are limited to:
>
> a. Non-residential structures.
>
> b. Residential structures with basements that satisfy FEMA's standards published in the Code of Federal Regulations [44 CFR 60.6 (b) or (c)].
>
> 2. Limit of Liability.
>
> We will pay you up to $30,000 under this Coverage D -- Increased Cost of Compliance, which only applies to policies with building coverage (Coverage A). Our payment of claims under Coverage D is in addition to the amount of coverage which you selected on the application and which appears on the Declarations Page. But the maximum you can collect under this policy for both Coverage A -- Building Property and Coverage D -- Increased Cost of Compliance cannot exceed the maximum permitted under the Act. We do not charge a separate deductible for a claim under Coverage D.

Id. Art. III(D)(1)-(2). There are a number of limitations on eligibility for Coverage D, only one of which is applicable here:

> 3. Eligibility
>
> a. A structure covered under Coverage A -- Building Property sustaining a loss caused by a flood as defined by this policy must:
>
> (2) Be a structure that has had flood damage in which the cost to repair equals or exceeds 50% of the market value of the structure at the time of the flood. The State or community must have a substantial damage provision in

4

> its floodplain management law or ordinance being enforced against the structure.

Id. Art. III(D)(3)(a)(2). Beyond what is provided in Coverage D, however, the SFIP does not cover the increased costs of compliance, as set forth in Article V(A):

> A. We only pay for direct physical loss by or from flood, which means that we do not pay you for:
>
> 6. The cost of complying with any ordinance or law requiring or regulating the construction, demolition, remodeling, renovation, or repair of property, including removal of any resulting debris. This exclusion does not apply to any eligible activities we describe in Coverage D -- Increased Cost of Compliance.

Id. Art. V(A)(6).

### C. Damage to Plaintiffs' Home

On December 31, 2005, Plaintiffs' home at 83 Shady Lane was damaged in a flood. See Cook Decl. at 2; Pieri Decl. at 2. The extent of the damage is the core of this dispute. See Bushaw Decl. ¶ 6, Ex. 1.[5] USAA appointed an independent adjuster to review Plaintiffs' claim and evaluate the damage to their home. Id. ¶ 4. Based on the independent adjuster's report, USAA paid Plaintiffs $24,382.51. Id. ¶ 5.

Plaintiffs disagreed with the independent adjuster's assessment of the damage, and subsequently submitted a "Proof of Loss" claiming $220,039.73. Cook Decl. at 4; Bushaw Decl. ¶ 6, Ex. 1. Plaintiffs then submitted an Additional Proof of Loss.

---

[5] Kevin Bushaw, the USAA General Adjuster assigned to Plaintiffs' SFIP claim, submitted a declaration in support of USAA's MSJ. Docket No. 23-3.

5

1  Cook Decl. at 4; Gleason Decl. Ex. 2.

2  At the time of the flood, Plaintiffs' home was valued at
3  $350,000.  Cook Decl. at 3-4.  According to Cook, the cost to
4  repair the flood damage was "well in excess of $175,000,"
5  satisfying the eligibility threshold for Coverage D.  See id. at
6  4; SFIP Art. III(D)(3)(a)(2).  Nick Calder, a General Contractor
7  who worked on Plaintiffs' home, estimated that repairing the flood
8  damage would cost $219,126, without addressing any code compliance
9  issues.  Calder Decl. at 1-2.[6]

10  In previous testimony, however, Plaintiffs conceded that
11  certain of the repairs they did were actually related to code
12  compliance rather than repairing flood damage.  See Gleason Decl.
13  Ex. 3 ("N. Cook. Dep.") at 66:9-69:13; Ex. 4 ("S. Cook Dep.") at
14  88:2-89:20.  For example, the Cooks replaced the staircase leading
15  to the second floor of their home "to meet code requirements from
16  the Town of Ross."  N. Cook Dep. at 66:21-22.  The reconfiguration
17  of the second floor living space was also done "to meet the code
18  requirements" and to meet "the exterior visual requirements of the
19  Town of Ross."  Id. at 68:6-7.  As Stefanie Cook summarized the
20  project, "This was not a renovation.  It's a pure repair to flood
21  damage and bringing -- meeting their requirements of code."  S.
22  Cook Dep. at 89:17-19.

23  Similarly, although Pieri now claims that the house was in
24  excellent shape prior to the flood and had no structural problems,
25  he previously offered a different viewpoint.  At a Town of Ross

---

[6] Nick Calder submitted a declaration in opposition to USAA's MSJ.  Docket No. 37.

6

1 Council Meeting, for example, Pieri said that when he first
2 inspected the house for the Cooks' pre-purchase assessment, he
3 found that "the footings were old, cracked, and in a deteriorated
4 state." Gleason Decl. Ex. 2 at PC00136 (Minutes of Ross Town
5 Council Meeting, attached to Proof of Loss prepared by Nathaniel
6 Cook). In his first assessment following the flood, Pieri noted
7 that the flood had "caused some uniform settlement to the
8 footings," and that "a larger more dangerous seismic event could
9 prove to buckle or break the old footings..." Gleason Decl. Ex.
10 5. Pieri made the following recommendation, noting both the age
11 of the house and what appear to be pre-existing structural flaws:

> We recommend removing the fireplace, replacing
> the building foundations and retrofitting
> lateral strength required for a seismic
> upgrade of the structure and also provide roof
> and attic floor framing rehabilitations. This
> would address the overall systematic weakness
> of residence. The roof structure is buckled
> and deflecting serious rafter understructured
> framing. The overstressed framing members
> need to be replaced and adequately connected
> to walls and laterally braced at interior and
> perimeter walls with a transferred load path
> to the foundations. The upper floor framing
> needs similar strengthening. You should also
> consider raising the structure as part of the
> foundation replacement to secure it from
> future flood damage. However, the greater
> concern is the general integrity of the
> building to withstand a seismic event. The
> age of the building and recent damage
> heightens the need to reinforce and
> rehabilitate this residence.

24 Id. In a subsequent assessment, after receiving correspondence
25 from Plaintiffs regarding USAA's denial of the claim, Pieri
26 claimed that USAA had misconstrued his statements and asserted,
27 as he did in his declaration in this matter, that the house was in

7

1  "excellent shape for its age" and that the damages were not due to
2  "pre-existing conditions related to the age of the building."
3  Gleason Decl. Ex. 6; see also Gleason Supp. Decl. Ex. 8; Pieri
4  Decl. at 1-2.
5     Plaintiffs filed this suit in August 2007, asserting claims
6  for breach of the flood insurance contract and breach of the
7  covenant of good faith and fair dealing.  See Compl.  Based on
8  these claims, Plaintiffs seek damages for failure to provide
9  benefits under the SFIP, as well as damages for mental and
10 emotional distress, punitive and exemplary damages.  Id. at 5.
11 Plaintiffs also demanded a jury trial on all issues.  Id. at 6.

### III. MOTION FOR SUMMARY JUDGMENT

#### A. Legal Standard

Entry of summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "Summary judgment should be granted where the evidence is such that it would require a directed verdict for the moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  Thus, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In addition, entry of summary judgment in a party's favor is

8

1 appropriate when there are no material issues of fact as to the
2 essential elements of the party's claim. <u>Anderson</u>, 477 U.S. at
3 247-49.

    **B.**   **Discussion**

Summary judgment in this matter is wholly inappropriate. The central issues of fact -- namely, the extent of the flood damage to Plaintiffs' house, the cost of the repairs, and whether the purported repairs are to address "direct physical loss by or from flood" or to address code compliance -- are all disputed. Moreover, the evidence on which the parties rely in support of their respective positions is made up of conflicting statements from the same individuals. Absent additional evidence supporting either party's position, the only way to resolve Nathaniel Cook's apparently contradictory statements regarding the scope of damage and repairs, or to resolve Pieri's apparently conflicting statements about the pre-flood condition of the house and the cause of the damages, would be to evaluate the credibility of each witness on the stand. Moreover, rather than resolving these questions or narrowing the issues, the supplemental briefing raised additional factual disputes regarding Plaintiffs' eligibility for Coverage D.

Because the major factual issues remain in dispute, summary judgment is not appropriate. The Court therefore DENIES USAA's Motion for Summary Judgment.

**IV.**   **MOTION TO QUASH**

USAA also moves to quash Plaintiffs' jury demand. Federal

9

Rule of Civil Procedure 39(a) governs whether or not the case should be tried by jury or by the court. Where, as here, one party has made a jury demand, the trial will proceed before the jury unless "the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial." Fed. R. Civ. P. 39(a)(2). USAA argues that because any claim paid under the SFIP would be paid with U.S. Treasury funds, there is no right to a jury trial. Plaintiffs did not oppose the Motion to Quash.

All flood claim benefits paid under the SFIP, as part of the National Flood Insurance Program, are U.S. Treasury funds. See Van Holt v. Liberty Mut. Ins. Co., 163 F.3d 161, 165 (3d. Cir. 1998). Although the WYO Carriers, such as USAA, issue the insurance policies and process claims, they do so as fiscal agents of the United States. Id. (citing 42 U.S.C. § 4071(a)(1)). The terms of the SFIP are fixed by the Federal Emergency Management Agency ("FEMA") rather than by the carriers, and the carriers are not permitted to deviate from those terms. Id. at 165-66. In short, a suit against a WYO carrier for breach of the SFIP is essentially a suit against FEMA. Id.; see also Flick v. Liberty Mut. Fire Ins. Co., 205 F.3d 386, 393 n.10 (9th Cir. 2000) ("Though policyholders may file claims against WYO Insurers in federal court, . . . the claim is, in reality, a claim against the federal government.").

It is well established that the Seventh Amendment right to a jury trial does not apply in actions against the United States, or to recover U.S. Treasury funds, unless the government expressly

consents to suit and authorizes trial by jury. See Lehman v. Nakshian, 453 U.S. 156, 160 (1981). The statute that governs judicial review of SFIP claims does not grant the right to a jury trial in such actions. See 42 U.S.C. § 4072. Because Congress did not expressly provide for trial by jury in this matter, Plaintiffs' claim for federal funds must proceed before the Court. The Court therefore GRANTS USAA's Motion to Quash Jury Demand.

## V.    STATE LAW CLAIMS

In the final motion, USAA moves the Court for judgment on the pleadings with respect to Plaintiffs' state law claims. USAA contends that Plaintiffs' extra-contractual claims are precluded and that Plaintiffs may not recover punitive damages, consequential damages, interest, or attorneys' fees. Plaintiffs did not oppose this motion.

The Court has reviewed the authorities submitted by USAA and finds the motion well supported. Numerous courts have found that extra-contractual claims asserted in SFIP disputes are preempted by federal law. See, e.g., Pecarovich v. Allstate Ins. Co., 272 F. Supp. 2d 981, 987-990 (C.D. Cal. 2003) (claims for breach of covenant of good faith and fair dealing, punitive damages, and interest preempted in SFIP dispute); Scherz v. S.C. Ins. Co., 112 F. Supp. 2d 1000, 1007-10 (C.D. Cal. 2000) (claim for breach of the implied covenant of good faith and fair dealing, punitive damages, and interest dismissed on preemption grounds); Bianchi v. State Farm Fir & Cas. Co., 120 F. Supp. 2d 837, 840-42 (N.D. Cal. 2000) (dismissing claim for breach of the implied covenant of good

11

faith and fair dealing, striking plaintiffs' request for emotional distress damages, exemplary damages and attorneys' fees).

The Court finds that Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is preempted, and that the requested damages for mental and emotional distress, the punitive damages, and the attorneys' fees Plaintiffs seek are all legally unavailable.  The Court therefore GRANTS USAA's motion for judgment on the pleadings with respect to Plaintiffs' state law claims.  Only the claim for breach of contract remains viable.

**VI.   CONCLUSION**

For the reasons set forth above, the Court DENIES USAA's Motion for Summary Judgment, GRANTS USAA's Motion to Quash, and GRANTS USAA's State Claims Motion.  All of Plaintiffs' claims and requested remedies beyond the breach of contract claim are dismissed with prejudice.  The breach of contract claim shall proceed to trial before the Court.

IT IS SO ORDERED.

Dated: December 16, 2008

_____
UNITED STATES DISTRICT JUDGE

12